[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11339

_____

D.C. Docket No. 8:09-cv-02308-RAL-MAP


KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS,
MICHAEL I. JANIS,
JONATHAN N. JANIS,

                                        Plaintiffs - Appellees,

versus

REVOLUTIONARY ARMED FORCES OF COLUMBIA,
(FARC), et al.,

                                        Defendants,

JOSE RICUARTE DIAZ HERRERA,

                                        Claimant - Appellant,

WACHOVIA BANK,
a Division of Wells Fargo Bank, N.A., et al.,

                                        Garnishees,

MERCURIO INTERNATIONAL S.A., et al.,

                                        Claimants.


                        _____

                            No. 13-11959
                        _____

                    D.C. Docket No.  8:09-cv-02308-RAL-MAP


KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
MICHAEL I. JANIS,
GREER C. JANIS,
JONATHAN N. JANIS,

                                        Plaintiffs - Appellees,

versus

REVOLUTIONARY ARMED FORCES OF COLUMBIA (FARC), et al.,

                                        Defendants,

CARMEN SIMAN,
ARMANDO JAAR,
RICARDO JAAR,
MOISES SAIEH,
CARLOS SAIEH,
ABDALA SAIEH,
JAQUELINE SAIEH,

U.S. Citizen Beneficial Owner of Brunello Ltd. Trust,
C. W. SALMAN PARTNERS,
SALMAN CORAL WAY PARTNERS,
CONFECCIONES LORD S.A.,
ALM INVESTMENT FLORIDA, INC.,
VILLAROSA INVESTMENTS FLORIDA, INC.,
KAREN OVERSEAS, INC.,
MLA INVESTMENTS, INC.,
JACARIA FLORIDA, INC.,
SUNSET & 97TH HOLDINGS, LLC,
MARIAM SUTHERLIN,
JAMCE INVESTMENTS, LTD.,
AMELIA SAIEH,

                                        Claimants - Appellants,


KATHYA SAIEH,
JAIME SAIEH,
LAURA SAIEH,
SANDRA SAIEH,
KAREN SAIEH,
GRANADA ASSOCIATES, INC.,

                                        Defendants - Appellants.



                    _____

                          No. 13-12019
                    _____

                D.C. Docket No.  8:09-cv-02308-RAL-MAP



KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,

3

CHRISTOPHER T. JANIS, et al.,

Plaintiffs - Appellees,

versus

REVOLUNTIONARY ARMED FORCES OF COLOMBIA (FARC), et al.,

Defendants,

PLAINVIEW FLORIDA II, INC.,
C. W. SALMAN PARTNERS,
SALMAN CORAL WAY PARTNERS,

Claimants - Appellants.

_____

No. 13-12116
_____

D.C. Docket No.  8:09-cv-02308-RAL-MAP

KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS, et al.,

Plaintiffs - Appellees,

versus

REVOLUTIONARY ARMED FORCES OF COLOMBIA,
(FARC), et al.,

Defendants,

4

CARMEN SIMAN,
ARMANDO JAAR,
MOISES SAIEH,
CARLOS SAIEH,

Claimants - Appellants.

_____

No. 13-12171
_____

D.C. Docket No.  8:09-cv-02308-RAL-MAP

KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS,
MICHAEL I. JANIS,
JONATHAN JANIS,

Plaintiffs - Appellees,

versus

REVOLUTIONARY ARMED FORCES OF COLUMBIA (FARC), et al.,

Defendants,

KATHYA SAIEH,
LAURA SAIEH,
SANDRA SAIEH,
KAREN SAIEH,

Defendants - Appellants,

CARLOS SAIEH,
BRUNELLO, LTD.,
JACQUELINE SAIEH,
U.S. Citizen Beneficial Owner of Brunello Ltd. Trust,

Claimants - Appellants.

_____

No. 13-12337
_____

D.C. Docket No.  8:09-cv-02308-RAL-MAP

KEITH STANSELL,
MARC GONSALVES,
THOMAS HOWES,
JUDITH G. JANIS,
CHRISTOPHER T. JANIS,
GREER C. JANIS,
MICHAEL I. JANIS,
JONATHAN N. JANIS,

Plaintiffs - Appellees,

versus

REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC), et al.,

Defendants,

LUIS SUTHERLIN,

Claimant - Appellant.

6

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(October 16, 2014)

Before WILSON, JORDAN and BLACK, Circuit Judges.

WILSON, Circuit Judge:

These appeals arise from the collection efforts of victims of a terrorist kidnapping in Colombia.  After obtaining a nine-figure default judgment against their captor, they attempted to collect through a series of ex parte garnishments and executions against third parties with purported illicit ties to the captor.  The third-party claimants challenge the judgments against their property on both substantive and procedural grounds, including alleged due process violations arising from the ex parte manner in which the district court initially handled the proceedings.  We affirm the district court as to all appeals but one: No. 13-12171, concerning Brunello Ltd.

## I.    Global Discussion

Because common themes run through all appeals, we initially discuss the underlying facts and common issues globally.  Later, we will apply our conclusions to the particular circumstances of each appeal and analyze the unique issues in a more individualized manner for each third-party claimant.

7

### A.     Underlying Procedural and Factual Background

On February 13, 2003, Keith Stansell, Marc Gonsalves, Thomas Howes, and Thomas Janis were flying over Colombia while performing counter-narcotics reconnaissance.  Members of the Revolutionary Armed Forces of Colombia (FARC) shot their plane down and, after the plane's crash landing, captured the group.  FARC immediately executed Janis and took the survivors hostage, holding them for over five years.  After they were rescued and returned to the United States, Stansell, Gonsalves, and Howes—along with Janis's wife, Judith G. Janis, as personal representative of his estate, and his surviving children, Christopher T. Janis, Greer C. Janis, Michael I. Janis, and Jonathan N. Janis—(collectively, Plaintiffs) filed a complaint against FARC in the United States District Court for the Middle District of Florida under the Antiterrorism Act, 18 U.S.C. § 2333, naming FARC and a number of associated individuals as defendants.  After court-directed service of summons by publication, FARC failed to appear, and the district court entered a default judgment in favor of Plaintiffs in the amount of $318,030,000 on June 15, 2010.

Because of the difficulty inherent in the direct execution of a judgment against a terrorist organization, Plaintiffs sought to satisfy their award by seizing the assets of "agenc[ies] or instrumentalit[ies]" of FARC pursuant to Section

8

201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, §

201(a), 116 Stat. 2322, 2337 (TRIA),[1] which reads:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a).  The elements a party is required to establish before executing

under TRIA § 201 are therefore quite straightforward.  The party must first

establish that she has obtained a judgment against a terrorist party that is either for

a claim based on an act of terrorism or for a claim for which a terrorist party is not

immune.  *Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006).  The

party must then show that the assets are blocked as that term is defined in TRIA.

*Id.*  Finally, the total amount of the execution cannot exceed the amount of

compensatory damages.  *Id.*  If the party wishes to execute against the assets of a

terrorist party's agency or instrumentality, the party must further establish that the

purported agency or instrumentality is actually an agency or instrumentality.  Of

---

[1] This provision is codified as a note to 28 U.S.C. § 1610.  For ease of reference and familiarity, we will cite to TRIA § 201, with accompanying subsections where appropriate.

9

the preceding elements, only the blocked asset and agency or instrumentality determinations are at issue in any of the appeals here.

TRIA defines "blocked assets" as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act [(TWEA)] or under sections 202 and 203 of the International Emergency Economic Powers Act [(IEEPA)]." TRIA § 201(d)(2)(A) (citation omitted). Assets are blocked when the United States Department of the Treasury Office of Foreign Assets Control (OFAC) designates the owner of the assets as a Specially Designated Narcotics Trafficker (SDNT). *See* 31 C.F.R. §§ 594.201, 594.301, 597.201, 597.303. OFAC's blocking power is authorized by TWEA, 12 U.S.C. § 95a, 50 App. U.S.C. §§ 1–14, 16–39, 40–44, and the IEEPA, 50 U.S.C. §§ 1701–1706, the blocking authority of which TRIA § 201 includes in its definition of blocked assets.[2] OFAC also has blocking authority under other legislation not mentioned in TRIA § 201, including the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§ 1901–08 (Kingpin Act). OFAC specifies the jurisdictional basis for any designation it makes, i.e. the statute under which an individual or entity is designated. Thus, the

---

[2] Designees under the IEEPA include those found by OFAC

> [t]o play a significant role in international narcotics trafficking centered in Colombia; . . . [m]aterially to assist in, or provide financial or technological support for or goods or services in support of, the narcotics trafficking activities of [SDNTs]; [or] to be owned or controlled by, or to act for or on behalf of, any other [SDNT].

31 C.F.R. § 536.312(b) and (c).

10

blocking of assets by OFAC does not necessarily bring those assets within the ambit of TRIA execution.  *See Stansell v. Revolutionary Armed Forces of Colom. (Mercurio)*, 704 F.3d 910, 915–17 (11th Cir. 2013) (per curiam) (reversing an order permitting TRIA execution of assets that OFAC had blocked pursuant to the Kingpin Act).[3]  All the individuals and entities party to these appeals (Claimants)[4] whose property is in jeopardy due to Plaintiffs' TRIA execution had been designated SDNTs by OFAC, rendering their assets blocked.  Other than Herrera, no party disputes that the assets in question were blocked at some point for purposes of TRIA execution, though some argue that their eventual de-listing during the pendency of the proceedings should have been given effect.

TRIA itself does not define the term "agency or instrumentality."  However, § 201 is codified as a note to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–11 (FSIA).  *See* 28 U.S.C. § 1610 (note).  The FSIA defines the term:

> An "agency or instrumentality of a foreign state" means any entity—
>
> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

---

[3] For the sake of clarity, we will cite this opinion hereinafter as *Mercurio*, 704 F.3d 910.

[4] As an additional tool for clarity, we will use "Claimants" when referring to all claimant-appellants collectively and "appellant(s)" when referring to a subset of them.

11

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title,[5] nor created under the laws of any third country.

*Id.* § 1603(b). Claimants here disagree with the district court's standard as well as its factual determinations regarding the agency or instrumentality status of each.

Plaintiffs initiated their collection efforts in each instance ex parte, without any direct notice to Claimants. The district court found that, for purposes of TRIA execution, each Claimant was an agency or instrumentality[6] of FARC and that each asset was blocked. Importantly, each Claimant eventually discovered the proceedings against their property. In each case, the district court sided with Plaintiffs and allowed the collection efforts to proceed (or, where such efforts had been completed, to lie).

---

[5] Those subsections define the citizenship of corporations and legal representatives of estates, infants, or incompetents.

[6] The district court defined an agency or instrumentality as

Any SDNT . . . , including all of its individual members, divisions and networks, that is or was ever involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or that assisted the FARC's financial or money laundering network, . . . because it was either:

(1) materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of . . . [FARC]; and/or
(2) owned, controlled, or directed by, or acting for or on behalf of, . . . [FARC]; and/or
(3) playing a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC].

12

Claimants appealed the various orders granting Plaintiffs' motions seeking to collect on their judgment using Claimants' assets and denying the motions filed by Claimants seeking relief.  They argue separately a number of issues on appeal, including many that Claimants share in common with one another: (1) that they were denied constitutional and statutory rights to notice and a hearing because they were not served with the writs of garnishment and execution or the motions requesting them; (2) that they were erroneously designated agencies or instrumentalities of FARC by the district court; (3) that their assets were not reachable under TRIA § 201 because they have been removed from OFAC's list of SDNTs; (4) that Plaintiffs did not obtain the licenses required to execute against OFAC-blocked assets; (5) that the judgments must be set aside for fraud; and (6) that on remand, we should assign a different judge to the proceedings.

### B.    Analysis of the Issues

We now turn to an analysis of the common issues argued on appeal.

### 1.    Constitutional and Statutory Due Process

Claimants contend that they were denied their rights to notice of the execution proceedings and an opportunity to be heard in violation of the Fifth Amendment, Florida law, and the FSIA.  Whether a due process violation occurred is reviewed de novo.  *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006) (per curiam).  The de novo standard also applies when determining whether

constitutional protections extend to foreign nationals.  *United States v. Emmanuel*, 565 F.3d 1324, 1330–32 (11th Cir. 2009) (reviewing de novo whether the Fourth Amendment applied to a foreign search of a foreign national).

Florida law has specific requirements for notice and an opportunity to be heard.  *See* Fla. Stat. § 56.21 ("When levying upon real property, notice of such levy and execution sale and affidavit . . . shall be made to the property owner of record in the same manner as notice is made to any judgment debtor pursuant to this section . . . ."); Fla. Stat. § 56.16 (outlining procedure for third-party claimants to halt an execution sale); Fla. Stat. § 77.055 (requiring service of garnishee's answer to the writ on "any . . . person disclosed in the garnishee's answer to have any ownership interest in the" asset); Fla. Stat. § 77.07(2) (permitting "any other person having an ownership interest in [garnished] property" to move to dissolve the writ with a motion "stating that any allegation in plaintiff's motion for writ is untrue").  In a nutshell, Florida law provides certain protections to third parties claiming an interest in property subject to garnishment or execution.  Such law is effective in proceedings in federal court, unless, as the district court held here, it is preempted by federal statute.  Fed. R. Civ. P. 69(a)(1).  We review de novo a district court's determination that federal law preempts state law.  *Pace v. CSX Transp., Inc.*, 613 F.3d 1066, 1068 (11th Cir. 2010).

The FSIA also contains a notice requirement.  28 U.S.C. § 1610(c)

(requiring notice required under § 1608(e) be provided where property is attached

under § 1610(a) or (b)).  Whether this notice requirement applies to TRIA

execution is a question of law we review de novo.  *Mercurio*, 704 F.3d at 914.

### a.    Constitutional Due Process

Preliminarily, we address whether, under the Fifth Amendment, Claimants

were entitled to due process.  The district court and Plaintiffs have at some points

maintained that some were not so entitled due to their status as foreign nationals.

Where a district court exercises its jurisdiction over property within the United

States, however, the owners of that property have due process rights regardless of

their location or nationality.  *See Russian Volunteer Fleet v. United States*, 282

U.S. 481, 491–92, 51 S. Ct. 229, 232 (1931) (applying the Takings Clause to

confiscation of foreign-owned property located within the United States);

*Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 413–19, 104 S. Ct.

1868, 1872–74 (1984) (applying due process protection to a Colombian

corporation);[7] *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de

Navegacion*, 732 F.2d 1543, 1545–49 (11th Cir. 1984) (analyzing due process

protections vis-à-vis a foreign entity whose property came under the court's

---

[7] *Helicopteros* dealt with due process protections afforded by the Fourteenth Amendment. 466 U.S. at 413, 104 S. Ct. at 1872.  However, Fourteenth Amendment due process cases are informative for Fifth Amendment due process inquiries.  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 944 (11th Cir. 1997).

15

jurisdiction); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 204 (D.C. Cir. 2001) ("*Russian Volunteer Fleet* makes clear that a foreign organization that acquires or holds property in this country may invoke the protections of the Constitution when that property is placed in jeopardy by government intervention." (citation omitted)).  Therefore, Claimants were entitled to the Fifth Amendment's guarantee of due process.

Now, we consider what due process requires.  As Plaintiffs point out in their briefs, post-judgment motions and writs typically need not be served on defendants, including when collection is pursued under the FSIA.  *See Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010).  Courts have held that this principle extends to agencies or instrumentalities of terrorist judgment debtors under the FSIA.  *See, e.g.*, *Estate of Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 23 (D.D.C. 2011) ("Congress did not intent [sic] to require service of garnishment writs on agencies or instrumentalities of foreign states responsible for acts of state-sponsored terrorism . . . .").  To the extent *Estate of Heiser* holds that alleged agencies or instrumentalities which dispute that classification are not entitled to notice of execution or garnishment proceedings against their assets, we disagree.

TRIA execution requires two separate determinations regarding the property being executed: (i) that the asset is blocked, and (ii) that the owner of the asset is

16

an agency or instrumentality of the judgment debtor. TRIA § 201(a). While the first can be definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under TWEA or the IEEPA, the second is a separate determination in addition to blockage not dispositively decided by OFAC designation. Furthermore, because an agency or instrumentality determination carries drastic results—the attachment and execution of property—it undeniably implicates due process concerns. *United States v. Bissell*, 866 F.2d 1343, 1352 (11th Cir. 1989) ("[Due process] is implicated when, as here, persons are deprived of their possessory interests in property."). It follows that parties whose assets are under threat of execution pursuant to TRIA § 201 are entitled to notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets. *See Dusenbery v. United States*, 534 U.S. 161, 167, 122 S. Ct. 694, 699 (2002) ("[I]ndividuals whose property interests are at stake are entitled to notice and an opportunity to be heard." (internal quotation marks omitted)).

Plaintiffs respond by emphasizing that this court and others have repeatedly held that due process does not require service of post-judgment motions. Typically, however, such motions are directed at the judgment debtor, *see Brown*

17

*v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1357 (5th Cir. 1976),[8] not at third parties such as Claimants. The difference—one that the district court did not appropriately consider—is crucial. Where the owner of the asset being garnished is the judgment debtor, "notice upon commencement of a suit is adequate to give a judgment debtor advance warning of later proceedings undertaken to satisfy a judgment." *Id.* at 1364. That same type of notice is not sufficient where the claimant is a third party, who cannot be expected to be on notice of the judgment.

It may be argued that agencies or instrumentalities are on constructive notice because, as agencies or instrumentalities of the judgment debtor—in this case, FARC—they share a legal identity with the judgment debtor. *Cf.* 28 U.S.C. § 1603(a) (defining "foreign state" for FSIA purposes to include an agency or instrumentality of a foreign state). While that reasoning seems rational in a vacuum, when considered in context, it is circular and illogical. That is, a third party can only be deemed to be on notice if it is associated with the judgment debtor, so it cannot be considered to have such notice until the district court makes the agency or instrumentality determination. Without notice and a fair hearing where both sides are permitted to present evidence, the third party never has an opportunity to dispute its classification as an agency or instrumentality. *Cf.*

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Alejandre v. Telefonica Larga Distancia de P.R., Inc.*, 183 F.3d 1277, 1284 (11th Cir. 1999) (applying the presumption of separate juridicial status of a state and its alleged instrumentality under the FSIA).  In short, it puts the cart before the horse to hold that Claimants had notice of the agency or instrumentality proceedings because they were agencies or instrumentalities of FARC, and such a finding would thus never be tested in an adversarial process.  Any party could be deemed an agency or instrumentality and thus be deemed to be on constructive notice, allowing seizure of its assets on a potentially erroneous designation about which it never even knew and never had the opportunity to challenge.  Therefore, due process entitled Claimants to actual notice of the post-judgment proceedings against them.  We will analyze the adequacy of the notice provided to each Claimant in Part II.

Further, because Claimants were entitled to the basic constitutional protection of due process, they were entitled to be heard on their challenge to the agency or instrumentality issue.  The district court eventually held generally that "some form" of process was due and that Claimants were afforded an adeqaute opportunity to be heard by (i) the requirement that Plaintiffs file motions in the district court and seek entry of a court order, (ii) the opportunity to challenge their respective designations both administratively and judicially, and (iii) the stay pending the outcome of *Mercurio*.  The first of these cannot constitute the requisite

19

opportunity to be heard.  Requiring evidence from a party seeking to execute against a third party's assets does nothing to give the third party an opportunity to be heard.  Due process contemplates offering a party an opportunity to rebut charges leveled against it, not allowing that party's opponent to present evidence supporting that charge.

The second manner in which Claimants were, according to the district court, given an opportunity to be heard is also constitutionally deficient.  Again, the agency or instrumentality determination is separate from the determination that an asset is blocked and carries more immediate and substantial consequences than does the SDNT designation.  Moreover, designation is a unilateral move that takes place and blocks a SDNT's assets before the SDNT has an opportunity to challenge the designation.[9]  An administrative challenge to OFAC designation affords a party an opportunity to challenge the decision to block its assets, not to challenge its status as an agency or instrumentality.

Finally, the third example of Claimants' opportunity to be heard—the stay—standing alone, is not sufficient to provide Claimants with due process.  However,

---

[9] We disagree with the conclusion that the right to challenge the OFAC designation provided a sufficient safeguard for Claimants and their property.  Some Claimants had commenced proceedings seeking de-listing when turnover judgments were entered against them.  For those Claimants who eventually succeeded in their challenges, the district court correctly ruled that de-listing did not apply retroactively, and the de-listed Claimants were unable to attain relief with respect to those assets already executed.  It cannot be that available de-listing procedures were effective due process bulwarks where a party can be listed, its assets blocked, and TRIA execution procedures begun—thus rendering future de-listing ineffective—before the party receives notice of the designation or blockage.

in conjunction with an actual opportunity for Claimants to be heard, it may satisfy

due process.  We will examine the circumstances of each appeal below to

determine the extent to which each Claimant had a sufficient opportunity to be

heard.

In addition, due process must not only be adequate; it must be timely.

*Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S. Ct. 1011, 1020 (1970).  Here,

Claimants argue that they were denied due process because they were not granted

pre-deprivation hearings—that is, prior to attachment under TRIA.  On this point,

we disagree.

We assess whether the procedure afforded to a party is timely considering

the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct.

893, 903 (1976), as refined by *Connecticut v. Doehr*[10]:

> [F]irst, . . . the private interest that will be affected by the prejudgment
> measure; second, . . . the risk of erroneous deprivation through the
> procedures under attack and the probable value of additional or
> alternative safeguards; and third, [we pay] principal attention to the

---

[10] In *Doehr*, the Supreme Court applied the *Mathews* analysis to a deprivation initiated by a private party.  *See* 501 U.S. at 11–16, 111 S. Ct. at 2112–15.  Under such circumstances, when assessing the third prong of the *Mathews* test, courts must give "principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections."  *Id.* at 11, 111 S. Ct. at 2112.  Therefore, we consider the private party's interests in the specific attachment as well as the government's interests affected by "financial or administrative burdens involving predeprivation hearings."  *See id.* at 16, 111 S. Ct. at 2115.  We also assess the government's "substantive interest *in protecting any rights of the plaintiff*[, which] cannot be any more weighty than those rights themselves."  *Id.* (emphasis added).  Because we consider the government's interest "in providing the procedure," we properly consider TRIA judgment creditors' ability to collect generally, not just that of Plaintiffs here.

interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

501 U.S. 1, 11, 111 S. Ct. 2105, 2112 (1991).  The first factor weighs in Claimants' favor.  *See  id.* at 11, 111 S. Ct. at 2112–13 (listing the "significant" consequences of attachment).  Although Plaintiffs point out that SDNTs have a diminished interest in their blocked assets because their ability to alienate that property is already restricted, SDNTs do retain some interest, especially because the possibility of unblocking remains, as occurred with a number of Claimants here.  *Cf. Bissell*, 866 F.2d at 1352–54 (recognizing the continued interest of a criminal defendant in frozen property prior to forfeiture).  As discussed below, de-listing does not operate retroactively, so attachment creates an independent restraint on property that may be effective even where de-listing occurs during the pendency of garnishment or execution proceedings.[11]

However, the second and third factors weigh substantially in favor of immediate attachment.  Before a writ of garnishment or execution pursuant to TRIA § 201 issues, a district court must determine that the property owner is a SDNT designated under TWEA or the IEEPA and is an agency or instrumentality of the judgment debtor terrorist party.  The district court did that here, after

_____

[11] At the same time, it is relevant that the burden accompanying attachment under TRIA is no more substantial than the already-existing burden of blockage.  In other words, attachment under TRIA is less burdensome than, for example, pre-hearing seizure of an asset.

22

Plaintiffs made factual proffers on those issues.  The risk of erroneous deprivation is therefore diminished.  The third factor weighs heavily in favor of a later hearing: ensuring adequate satisfaction of judgments against terrorist parties.  During the pendency of execution proceedings, a number of events may occur which make satisfaction using a particular asset impossible.  Other judgment creditors may seek to execute against the asset.  The government may take action that makes the asset unreachable, including seizure or de-listing of the alleged agency or instrumentality (which may or may not be the result of a finding that the SDNT designation was incorrectly reached), the latter of which would enable the asset owner to move the asset (or proceeds from its sale) outside the reach of any United States district court.  *Cf. Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S. Ct. 2080, 2090 (1974) ("[P]reseizure notice and hearing might frustrate the interests served by the statutes . . . if advance warning of confiscation were given."); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610, 94 S. Ct. 1895, 1901 (1974) (noting "the risk of destruction or alienation if notice and a prior hearing are supplied, and the low risk of a wrongful determination of possession" as considerations supporting the constitutionality of pre-notice seizure of household goods).  Mere attachment is a minimally intrusive manner of reducing these risks, especially because blocked assets, by definition, already have more substantial restraints on their alienation.  Because the factors weigh in favor of immediate

23

attachment, Claimants were not constitutionally entitled to a hearing before the writ issued.  In sum, Claimants were entitled to notice and to be heard before execution, though not necessarily before attachment.

### b.    Statutory Entitlements to Notice and Hearing

Now we consider whether Florida procedure governs TRIA execution. Plaintiffs contend, and the district court held, that TRIA § 201 partially conflicts with Florida garnishment and execution statutes and that their notice and hearing provisions therefore do not govern garnishment and execution procedure under TRIA § 201.  Essentially, the district court held that, because TRIA § 201's purpose is to facilitate collecting on judgments against terrorist parties, any state legislation that might hinder collection efforts in any manner—even if their purpose was to give potentially innocent, third-party claimants the opportunity to contest execution efforts—conflicted with TRIA § 201.  We disagree.  Nothing about the language or purpose of TRIA § 201 indicates that it conflicts with Florida's requirements that owners of property being garnished or executed against are entitled to notice, notwithstanding TRIA's use of the word "notwithstanding." *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 687–89 (5th Cir. 2013) (refusing to give effect to an interpretation of TRIA § 201 that would read "notwithstanding" to "operate[] to override all statutes that, *by their purpose or effect*, shield assets from attachment or execution"); *see Altria Grp., Inc. v.*

24

*Good*, 555 U.S. 70, 77, 129 S. Ct. 538, 543 (2008) (noting that courts presume that preemption does not apply).

We cannot say that the state garnishment law in this case is preempted. Contrary to the district court's conclusion, Florida law does not shield terrorist assets from execution. Instead, Florida's notice requirements simply provide the procedure for executing against the full range of assets that fall within the ambit of TRIA § 201. Florida's statutory notice scheme for garnishment proceedings does not conflict with TRIA's "notwithstanding" provision because the assets TRIA subjects to execution are still subject to execution. Therefore, TRIA § 201 does not preempt Florida law, and judgment creditors seeking to satisfy judgments under it must follow the notice requirements of Florida law. *See* Fed. R. Civ. P. 69(a)(1).

Claimants also assert that, pursuant to the FSIA, specifically 28 U.S.C. § 1610(c), Plaintiffs should have served a copy of the default judgment required by 28 U.S.C. § 1608(e) on Claimants. Here, Claimants are wrong for a number of reasons. First, § 1610(c) governs "attachment[s] or execution[s] referred to in subsections (a) and (b) of this section." The attachments and executions here were obtained pursuant to TRIA § 201, not 28 U.S.C. § 1610(a) or (b). Second, § 1608(e) deals with default judgments obtained against foreign states and their political subdivisions and agencies or instrumentalities. FARC is not a foreign

25

state, and Claimants are not political subdivisions or agencies or instrumentalities of one. Therefore, § 1608(e) notice is, by its very plain terms, not required in this context.

In sum, the district court erred when it held that Florida law did not govern the garnishment and execution procedures and that the alleged agencies or instrumentalities were not entitled to due process. Whether and how this affects the disposition of each appeal is contingent on their respective facts, and we thus reserve the more particularized analyses for the discussions of each appeal below.

## 2.    Agency or Instrumentality

Claimants' second primary argument on appeal is that they were erroneously found to be agencies or instrumentalities of FARC. They object both to the district court's chosen standard for identifying agencies or instrumentalities and to the district court's ultimate determinations. Turning to the preliminary question, whether the district court applied the correct standard in reaching the agency or instrumentality determination is a legal question we review de novo. *Mercurio*, 704 F.3d at 914.

Claimants argue that, because TRIA does not have its own definition of "agency or instrumentality" and is codified as a note to 28 U.S.C. § 1610, the district court should have applied the FSIA definition, 28 U.S.C. § 1603(b), which applies to § 1610. To apply that definition here, we would have to tweak §

26

1603(b)'s definition because it requires that a purported agency or instrumentality be an organ of, or majority-owned by, "a foreign state or political subdivision thereof," 28 U.S.C. § 1603(b)(2), and Claimants are alleged to be agencies or instrumentalities of a non-state terrorist organization. By suggesting that agencies or instrumentalities of parties other than foreign states or their political subdivisions may be subject to TRIA execution, Claimants seem to imply that, where the statute contains standards that are inapplicable to non-state terrorist parties, we should simply relax the foreign state requirement. Assuming that such a re-reading of the statute is appropriate, applying the § 1603(b) standard to TRIA § 201 would permit TRIA execution against terrorist parties or parties that are organs of or majority-owned by a terrorist party, regardless of whether the terrorist party is a state or non-state actor. *See* 28 U.S.C. § 1603(b)(2).

We cannot adopt this flexible application of § 1603(b) because it would create an absurd result and leave TRIA § 201 nearly meaningless. First, because this would only permit execution against organs, political subdivisions, and majority-owned organizations, individuals are affirmatively excluded from execution. *Samantar v. Yousuf*, 560 U.S. 305, 314–16, 130 S. Ct. 2278, 2286–87 (2010). Section 1603(b)(3) further limits agency or instrumentality findings to parties "which [are] neither . . . citizen[s] of a State of the United States . . . , nor created under the laws of any third country." 28 U.S.C. § 1603(b)(3). Because

27

any organization with legal personhood would necessarily be either "a citizen of a State of the United States . . . [or] created under the laws of any third country," none could be an agency or instrumentality under this definition.[12] Therefore, applying the FSIA's definition of agencies or instrumentalities to TRIA would leave only terrorist states as potential sponsors of agencies or instrumentalities under TRIA § 201, eviscerating TRIA's effectiveness vis-à-vis non-state terrorist organizations. This cannot stand, as TRIA's definition clearly contemplates non-state judgment debtors being subjected to TRIA execution. *See* TRIA § 201(d)(4) (defining "terrorist party" to include both state actors and non-state terrorist organizations). Accordingly, the district court was correct to apply a different standard so that Congress's intent could be carried out.[13] *See Hausler v. JP*

---

[12] And this is a generous interpretation of the final clause of § 1603(b)(3). The "third country" element uses as a reference the "foreign state or political subdivision thereof" of which the party is purported to be an organ or by which it is purported to be owned. Where the agency or instrumentality's parent is not a foreign state or its subdivision, the mention of a third country would be illogical or inapplicable. At best, it could be explained as effectively making every country a "third country." Under such an interpretation, all organizations created under the laws of any country are created under the laws of a third country and thus excluded from the definition of an agency or instrumentality.

Moreover, the rationale of the third country exception "is that if a foreign state acquires or establishes a company or other legal entity in a foreign country, such entity is presumptively engaging in activities that are either commercial or private in nature," rendering that entity unprotected by the principle of sovereign immunity for purposes of the FSIA. H.R. Rep. No. 94-1487, at 15 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6614. The flipside is that, when a foreign state establishes a legal entity under its own laws, it seeks to engage in the "public, non-commercial activity" which the FSIA protects. This rationale is inapplicable to TRIA § 201, providing further support for the inapplicability of § 1603(b) to TRIA § 201.

[13] At the same time, it is not proper for the district court to rely solely on OFAC designation as creating an irrebuttable presumption of agency or instrumentality status. The agency or instrumentality determination is separate from the blocked asset determination. The

28

*Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 531 (S.D.N.Y. 2010) (recognizing that Congress's purpose in enacting TRIA § 201 was to "'deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism'" (quoting H.R. Rep. No. 107-779, at 27 (2002) (Conf. Rep.), *reprinted in* 2002 U.S.C.C.A.N. 1430, 1434)).

Making the FSIA's standard more flexible does not help, either. If either the *Samantar* non-individual requirement or the majority-ownership requirement is applied, TRIA § 201 would still be toothless. Sovereign countries—the parties the FSIA contemplates—operate with more transparency, and their agencies or instrumentalities are likelier to be diplomatic organs or state-owned enterprises with clear ownership structures that makes application of § 1603(b) feasible. *See, e.g.*, *Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004) (holding that the Korean Deposit Insurance Corporation was "an organ of a foreign state because [it] was formed by statute . . . and presidential decree"); *S & S Mach. Co v. Masinexportimport*, 706 F.2d 411, 414 (2d Cir. 1983) (identifying "state central banks and export associations" as the "paradigm of a state agency or instrumentality"). On the other hand, terrorist organizations such as FARC operate in the shadows out of necessity. For example, a corporation organized under

---

district court must therefore provide alleged agencies or instrumentalities an opportunity to challenge allegations of agency or instrumentality status with their own evidence.

29

Florida law will almost certainly not list FARC as a shareholder of record. Instead, it will operate through layers of affiliated individuals and front companies.

Indeed, the agencies or instrumentalities here were, according to OFAC, part of FARC's money laundering operations. These operations result from a need for clandestine operation, the type § 1603(b) cannot possibly address. Applying § 1603(b) to TRIA § 201 would put the victims of terrorist organizations in the same place they were prior to TRIA's enactment: proud owners of multi-million-dollar judgments with no means of enforcing those judgments. This would counteract Congress's purpose in enacting TRIA. *See Hausler*, 740 F. Supp. 2d at 531.

Because the realities of terrorism make it unrealistic to apply the FSIA standard to TRIA execution, we think that the district court developed a proper standard. As the district court noted in its orders finding agency or instrumentality status, its standard "us[ed] the plain and ordinary meaning of those terms." Claimants here give us no reason to believe that any other standard is preferable or proper.

In addition to attacking the standard applied by the district court, Claimants challenge the district court's factual determinations regarding agency or instrumentality status. Because these challenges present fact-specific questions, we leave this discussion to the individualized analyses, where we will review the district court's determinations for clear error. *United States v. Perkins*, 348 F.3d

30

965, 969 (11th Cir. 2003) ("We assess the district court's findings of fact under the clearly erroneous standard . . . .").

### 3.    Effect of OFAC De-listing.

Claimants argue that their OFAC de-listing should operate retroactively to put their assets out of Plaintiffs' reach because they are no longer blocked for purposes of TRIA § 201.  Plaintiffs respond that, once the writ of garnishment is served on the garnishee and their lien attaches, subsequent de-listing has no effect. OFAC's regulations clearly set out the result in such a situation:

> Any amendment, modification, or revocation . . . of any order, regulation, ruling, instruction, or license issued by . . . [OFAC] shall not, unless otherwise specifically provided, be deemed to affect . . . any civil or criminal suit or proceeding *commenced or pending prior to such amendment, modification, or revocation*.  All penalties, forfeitures, and liabilities under any such order, regulation, ruling, instruction, or license *shall continue and may be enforced as if such amendment, modification, or revocation had not been made*.

31 C.F.R. § 536.402 (emphasis added).  Claimants contend that the district court incorrectly interpreted this regulation to prevent giving retroactive effect to OFAC de-listing.  We review a district court's interpretation of a regulation de novo. *Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 622 F.3d 1307, 1320 (11th Cir. 2010).

Pursuant to the clear terms of the OFAC regulation, if Plaintiffs commenced their garnishment proceedings prior to revocation of the OFAC order listing them as SDNTs, then the order of revocation "shall not . . . be deemed to affect" the

garnishment proceedings.  31 C.F.R. § 536.402.  The question is, then, when proceedings commenced relative to Claimants' de-listing.  Because Federal Rule of Civil Procedure 69(a)(1) commands that state civil procedure governs execution proceedings, Florida law governs this issue.  In Florida, execution and garnishment proceedings are ancillary proceedings.  *See Burdine's, Inc. v. Drennon*, 97 So. 2d 259, 260 (Fla. 1957); *Williams Mgmt. Enters., Inc. v. Buonauro*, 489 So. 2d 160, 167–68 (Fla. Dist. Ct. App. 1986).  Thus, an execution or garnishment proceeding "commence[s] when the writ is issued or the pleading setting forth the claim of the party initiating the action is filed."  Fla. R. Civ. P. 1.050.  Therefore, a civil proceeding commenced no later than service of the writ on the garnishee in each case.  Under § 536.402, any OFAC de-listing after that moment was ineffectual for determining whether the asset was blocked for TRIA § 201 purposes.

Precedent cited by Claimants seemingly holding that de-listing operates retroactively does not support that proposition.  Claimants' cherry-picked language from *Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi* appears to indicate that the assets must be blocked at the time judgment against the asset is finalized.  *See* 556 U.S. 366, 369, 377–79, 129 S. Ct. 1732, 1735, 1739–40 (2009) ("We ultimately hold that the Cubic Judgment was not a 'blocked asset' at the time the Court of Appeals handed down its decision . . . .").  The controlling determination in that case, though, was that the

32

asset in question was *never* blocked because Iran's interest in it arose after the Treasury Department unblocked all Iranian assets. *Id.* at 376, 129 S. Ct. at 1739. In *Holy Land Foundation*, the assets were unreachable because they were unblocked during the pendency of the original civil suit, prior to the commencement of any execution proceeding. 722 F.3d at 687 (holding that the government's restraining order against a blocked asset obtained prior to the entry of a civil judgment unblocked it for TRIA purposes).

This rule is not just prescribed by law; it is also good policy. Applying de-listing to the "blocked asset" element of an ongoing TRIA execution proceeding would undermine the finality of a judgment until direct review of the judgment concludes. Further, such a policy would provide an incentive to SDNTs to draw out and delay execution proceedings while their OFAC administrative challenges were pending. Such a tactic counters the policy of satisfying judgments, especially where OFAC de-listing is not necessarily an exoneration.

### 4. OFAC Licenses

Claimants also argue that the execution violated OFAC regulations which purportedly require a party executing or attaching blocked assets to obtain a license from OFAC. *See* 31 C.F.R. § 598.205(a) and (e). This section, however, applies only where a party is designated pursuant to the Kingpin Act and the Foreign Narcotics Kingpin Sanctions Regulations, 31 C.F.R. § 598.314(b) (Kingpin

Regulations).  *See* 31 C.F.R. § 598.205 (listing the Kingpin Act as authority for the regulation requiring licensure).  The only party designated under the Kingpin Act and its accompanying regulations was Herrera; therefore, this argument is inapplicable to the other parties.[14]

### 5.    Fraud

Claimants argue that the means by which Plaintiffs moved against their assets constituted fraud, creating grounds for setting aside the judgments under Federal Rule of Civil Procedure 60(b)(3).  We review a district court's denial of a Rule 60(b)(3) motion for abuse of discretion.  *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007).  The movant must establish fraud by clear and convincing evidence.  *Id.*  Claimants here take issue with Plaintiffs' deliberate failure to formally serve them with process, purportedly dubious legal arguments and factual allegations, and failure to disclose adverse law.

However, none of the complained-of acts or omissions provide clear and convincing evidence of fraud.  The failure to serve was based on the good-faith but erroneous belief that it was not required, which was based on cases instructing that post-judgment motions need not be served.  *See, e.g.*, *Peterson*, 627 F.3d at 1130.  Even where Plaintiffs' legal arguments later turned out to be incorrect, we have no reason to doubt that they were made in good faith.  That TRIA § 201 did not allow

---

[14] As discussed below, the licensing requirement does not affect the outcome of Herrera's appeal.

execution against assets blocked under the Kingpin Act was not raised by any party until the Department of Justice intervened as amicus in the *Mercurio* appeal, indicating a lack of bad faith in pursuing Herrera's assets. The allegedly fraudulent factual allegations were not misrepresentations, even if they were based on scant evidence, and the failure to disclose that some parties had begun the process of challenging their designation was not fraudulent. Finally, Claimants do not identify the adverse law Plaintiffs failed to disclose. Because Claimants do not identify facts amounting to fraud, we affirm the district court's denial of the 60(b)(3) motions.[15]

## 6.    Reassignment

Finally, Claimants request reassignment to a new district court judge on remand. We consider three factors when a party requests reassignment: "(1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment." *United States v. Torkington*, 874 F.2d 1441, 1447 (11th Cir. 1989) (per curiam). Only Brunello faces a remand, but

---

[15] Because Plaintiffs and their counsel acted in good faith throughout the proceedings, the appellant's motion for sanctions pursuant to 28 U.S.C. § 1927 in Appeal No. 13-11339 is denied. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2006) ("We have consistently held that an attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." (internal quotation marks omitted)).

35

as we discuss below, our remand includes specific instructions that give the district court little discretion.  Moreover, we are confident that Judge Lazzara will be fair and just.  Therefore, reassignment is unnecessary.

## III.   Individualized Discussion

We now turn to a discussion of the facts of the individual appeals and apply our generalized conclusions to the circumstances of each appeal.  Where an appeal raises a unique argument, we analyze that argument to decide whether it is grounds for reversing the district court.

### A.     No. 13-11339 (Herrera)

OFAC designated Jose Ricuarte Diaz Herrera as a SDNT on May 13, 2010, 75 Fed. Reg. 27,118, for allegedly assisting in FARC's financial fronts network, thereby blocking his assets.[16]  Herrera attempted to use an electronic funds transfer

---

[16] Herrera was designated under the Kingpin Act and the Kingpin Regulations.  The Kingpin Act permits designation of foreign persons

> materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker . . . ; . . . owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker . . . ; . . . [or] playing a significant role in international narcotics trafficking.

21 U.S.C. § 1904(b)(2)–(4); *see also* 31 C.F.R. § 598.314(b).  OFAC did not specify on which of these grounds it based its decision to designate Herrera.  Although TRIA § 201(d)(2)(A) does not expressly list assets blocked pursuant to the Kingpin Act among those assets subject to execution or attachment pursuant to TRIA § 201, the district court held that those assets were in fact subject to execution or attachment because "[t]he Kingpin Act . . . was enacted pursuant to Congressional findings and authority arising from the [IEEPA]."  We later held that execution or attachment under TRIA § 201 does not include those assets blocked under the Kingpin Act and is

(EFT) to transfer some of his own money from a Colombian brokerage firm account into a deposit account in his name at a Colombian bank in June of 2010. Wachovia, N.A., acting as an intermediary in the EFT, halted the transfer no later than September 8, 2010, and notified OFAC, as it must under 31 C.F.R. § 501.603. Herrera subsequently began the process for de-listing as a SDNT by filing a petition with the OFAC office in Bogota, Colombia, as provided in 31 C.F.R. § 501.807.  That petition was granted when OFAC removed Herrera's SDNT designation and unblocked his assets effective April 30, 2013.  78 Fed. Reg. 28,700-01 (May 15, 2013).

On December 15, 2010, Plaintiffs moved for a writ of garnishment against the blocked Wachovia funds.  The district court granted the motion on December 16, holding that (1) Herrera was an agency or instrumentality of FARC; (2) funds blocked under the Kingpin Act were subject to garnishment under TRIA § 201; (3) Plaintiffs did not need a license from OFAC to garnish the funds; (4) the blocked funds were property within the United States; and (5) Herrera was not entitled to notice or a hearing.  After the writ was served on Wachovia, Wachovia filed an answer to the writ on January 11, 2011, wherein it objected to the writ's issuance based on their assertion that Federal Rule of Civil Procedure 19 may have required

---

limited to those assets which were blocked under the acts expressly listed in TRIA § 201(d)(2)(A): TWEA and the IEEPA. *Mercurio*, 704 F.3d at 917.  Herrera bases his appeal partly on the district court's erroneous order, which we discuss below.

the joinder of other parties and other beneficiaries, including Herrera. The district court entered judgment against Wachovia on January 18, 2011, reaffirming that Herrera was not entitled to notice or a hearing. No notice of these proceedings was served on Herrera.

Herrera's attorney in New York learned of the garnishment proceedings no later than January 26, 2011, eight days after the district court's entry of judgment; the attorney was advised by counsel representing Wachovia to "take up his grievances with Judge Lazzara." Herrera and his attorney failed to take any action until Herrera hired a Florida attorney on February 24, 2011. According to Herrera, before the attorney could accept fees for his representation in any matter related to the OFAC designation, he had to apply for and be issued a license from OFAC, which he obtained on May 12, 2011. Herrera still waited to file anything in the district court to address the garnishment proceedings until October 31, 2011, when he filed (1) a motion for relief from the judgment entered on January 18 pursuant to Federal Rules of Civil Procedure 12(b)(5), 55(c), and 60(b), as well as the Fifth Amendment; (2) a motion for relief from the writ of garnishment pursuant to Federal Rule of Civil Procedure 69(a)(1) and Florida garnishment law as well as the Fifth Amendment; and (3) a motion to disqualify Judge Lazzara pursuant to 28 U.S.C. § 455(a) and (b) as well as the Fifth Amendment. The district court denied the motion to disqualify on December 5, 2011, and stayed the remainder of the

motions pending the outcome of *Mercurio*.  After we released that opinion, the district denied the remaining motions, holding that laches barred consideration of them and that our opinion in *Mercurio* could not apply retroactively.  Herrera appeals from that order.

Typically, a turnover judgment is the final, appealable judgment in garnishment proceedings.  Here, the district court entered that turnover judgment on January 18, 2011.  Federal Rule of Appellate Procedure 4(a) requires parties to file any notice of appeal within thirty days after judgment is entered.  Herrera did not file anything with the district court until October 31, 2011, more than nine months after the entry of judgment, when he filed motions seeking various types of relief.  The district court denied the consolidated motion on February 26, 2013.  Herrera timely filed a notice of appeal from that order.  The order was final and appealable.  *See Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1401 (11th Cir. 2000); *Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999).

Nonetheless, the orders denied motions to set aside the judgment, so we must consider "only the propriety of the denial or grant of relief and . . . not . . . issues in the underlying judgment."  *Id.*  Denials of Rule 60(b) and 55(c) motions are generally subject to an abuse of discretion standard of review.  *In re Worldwide*

39

*Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

However, motions to set aside for voidness under Rule 60(b)(4) are subject to de novo review. *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001). We hold that the district court did not abuse its discretion or err in denying the motions.

A judgment can be set aside for voidness where the court lacked jurisdiction or where the movant was denied due process. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271, 130 S. Ct. 1367, 1377 (2010). This includes lack of personal jurisdiction and defective due process for failure to effect proper service. *Worldwide Web*, 328 F.3d at 1299. Herrera is correct to point out that a motion to set aside a judgment for voidness pursuant to Federal Rule of Civil Procedure 60(b)(4) is not subject to a typical laches analysis. *Hertz Corp. v. Alamo Rent-a-Car, Inc.*, 16 F.3d 1126, 1130 (11th Cir. 1994). "However, there are limitations on this doctrine [that jurisdictional defects are grounds for granting a 60(b)(4) motion] . . . [including] that objections to personal jurisdiction (unlike subject matter jurisdiction) are generally waivable." *Worldwide Web*, 328 F.3d at 1299. Because Herrera knowingly sat on his rights for nine months before filing anything at all with the district court, he waived his right to object to any defects in the service of process or to any denial of his right to be heard. *See Espinosa*, 559 U.S.

40

at 275, 130 S. Ct. at 1380 ("Rule 60(b)(4) does not provide a license for litigants to sleep on their rights.").

Herrera claims that the delay was out of his control because his attorney was required to obtain a license before he could be paid using the blocked funds. Assuming this excuses his delay,[17] Herrera still fails to provide us with grounds for considering the motion because he waited an additional five months after his attorney was licensed to file anything with the district court. Herrera does not give an acceptable reason for this delay. Therefore, the district court did not err in denying the Rule 60(b)(4) motion.

The additional grounds for voidness Herrera argues apply here are meritless. The district court had subject matter jurisdiction. It is well settled that a judgment is not void "simply because it is or may have been erroneous." *Espinosa*, 559 U.S. at 270, 130 S. Ct. at 1377 (internal quotation marks omitted); *see also Oakes v. Horizon Fin., S.A.*, 259 F.3d 1315, 1319 (11th Cir. 2001) ("[I]t is well-settled that a mere error in the exercise of jurisdiction does not support relief under Rule 60(b)(4).").

---

[17] And we merely assume this for purposes of this analysis. It is not difficult to imagine that Herrera would be able to find an attorney who would file a notice of appeal before the deadline, a Federal Rule of Appellate Procedure 4(a)(6) request for reopening the time to file an appeal, or a Rule 60(b) motion immediately upon learning of the judgment against Herrera at least to keep Herrera's opportunity to seek redress from spoiling while the license application was pending.

41

Plaintiffs' contention that assets blocked under the Kingpin Act are subject to TRIA execution is not a claim that the district court lacked jurisdiction. The district court had entered judgment on the writ before we issued *Mercurio*, so the mere fact that we *later* decided that TRIA § 201 does not apply to assets blocked under the Kingpin Act means the district court's judgment may have been erroneous, but it does not mean the court lacked subject matter jurisdiction. Therefore, the district court had subject matter jurisdiction, and a motion to set aside the judgment for voidness does not lie based on lack of subject matter jurisdiction.

Herrera's argument that the judgment was void because Plaintiffs failed to obtain licenses from OFAC is likewise unavailing. Voidness for purposes of a 60(b)(4) motion contemplates lack of jurisdiction or defects in due process that deprive a party of notice or an opportunity to be heard. *Espinosa*, 559 U.S. at 271, 130 S. Ct. at 1377. It is not sufficient to cite a regulation that makes use of the word "void," *see* 31 C.F.R. § 598.205(a) and (e), and Herrera does not provide additional argument for why execution of OFAC-blocked assets without a license constitutes a "fundamental infirmity." *See Espinosa*, 559 U.S. at 270, 130 S. Ct. at 1377.

Motions filed pursuant to Rule 60(b)(6) and 60(b)(3) are not subject to the very generous timing considerations that 60(b)(4) motions are because they do not

carry the same jurisdictional and due process concerns. *See, e.g.*, *Hertz*, 16 F.3d at 1130 (holding *only* that Rule 60(b)(4) motions are not subject to the "reasonable time" requirement). Thus, they "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Even assuming again that we should not expect Herrera to have filed his motion before his attorney was licensed, the five-month delay that followed his licensure surely was unreasonable. Therefore, we will not consider the 60(b)(6) or 60(b)(3) claims.

Rule 55(c) provides an additional, less "stringent" standard: good cause. *See Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988). However, that standard applies to setting aside an entry of default and is inapplicable in the instant case because the district court, in fact, entered a default judgment. *See* Fed. R. Civ. P. 55(c) (providing the court may set aside an *entry* of default for good cause and a default *judgment* under Rule 60(b)). Accordingly, our Rule 60(b) analysis governs this issue. *See Harrell*, 858 F.2d at 669 ("Because a judgment had not been entered the trial court had the discretion to set aside the entry of default under Rule 55(c) rather than under the more stringent provisions of Fed. R. Civ. P. 60(b) that would have controlled if judgment had been entered.").

Therefore, we affirm the district court's order denying Herrera's requested relief.

**B.    No. 13-12019 (The Partnerships and Plainview)**

43

Salman Coral Way Partners and C.W. Salman Partners (collectively, "the Partnerships") are partnerships organized under Florida law.  Plainview Florida II, Inc. (Plainview) owns a 50-percent share of each of the Partnerships.  The remaining 50 percent is owned by Granada & Associates, Inc. (Granada), which is not a party to this appeal.

OFAC designated the Partnerships as SDNTs under the IEEPA on March 7, 2007, because of alleged ties to the North Valley Cartel (NVC).  Specifically, OFAC alleged that the Partnerships were owned by SDNT individuals who themselves had ties to the NVC.  The Partnerships argued that those individuals, Carlos Saieh and Moises Saieh, had ownership interests in Granada, not any direct interest in the Partnerships.  Additionally, the OFAC press release did not mention FARC.  The Partnerships challenged their designation and received licenses from OFAC to continue operations.  OFAC de-listed the Partnerships, as well as Granada and the Saiehs, on January 10, 2012.

As in Herrera's case, Plaintiffs sought to execute against the Partnerships' blocked assets under TRIA § 201.  On August 31, 2011, Plaintiffs moved, ex parte, for writs of garnishment against deposit accounts held by the Partnerships at Terrabank, N.A.  In support of the motion, Plaintiffs submitted the OFAC press release documenting the Partnerships' alleged ties to the NVC and affidavits from two experts familiar with Colombian narcotrafficking.  The affidavits, one from a

44

Senior Analyst in the Office of Naval Intelligence and the other from a Colombian Marine Corps officer, documented FARC's ties to the NVC. Both testified that the NVC, including its "individual members, divisions, and networks," was an agency or instrumentality of FARC based on the district court's standard. The district court granted the writs of garnishment on September 6, 2011.[18] Based on the fact that OFAC had designated the Partnerships as SDNTs because of alleged ties to the NVC, the district court found that they were agencies or instrumentalities of the NVC. Because of the testimony that the NVC, including its members, divisions, and networks, was an agency or instrumentality of FARC, the district court determined that the Partnerships were in turn agencies or instrumentalities of FARC,[19] opening their blocked assets to execution by Plaintiffs under TRIA § 201. The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority.

The district court further determined that the Partnerships were not entitled to notice or an opportunity to be heard. Specifically, the court held that because TRIA § 201 preempts Florida garnishment law and does not contain any provisions for notice or an opportunity to be heard, the Partnerships would not be afforded

---

[18] The writ as to Plainview's account was issued in error because it was never a SDNT. Plaintiffs resolved the matter by returning the amount in Plainview's account to Plainview.

[19] The district court found that the NVC's "OFAC designated member organizations, partners, affiliates, and/or money laundering financial network members, are all agencies or instrumentalities of the FARC, [including] the Terrabank, N.A. SDNT account holders who are all OFAC designated members, affiliates, front persons, or entities within the [NVC]."

those protections.  Accordingly, the order granting the writs of garnishment was entered without formal notice to the Partnerships.  On September 8, 2011, the district court stayed all garnishment proceedings pending the outcome of the *Mercurio* appeal.  The district court later granted a motion for clarification from Plaintiffs, which allowed Plaintiffs to continue the garnishment action during *Mercurio*'s pendency.[20]  After service of the writs, Terrabank turned over the contents of the deposit accounts on September 23 without filing an answer.

On October 7, 2011, Plaintiffs moved for a writ of execution against four parcels of real property owned by the Partnerships.  The district court granted the writ on October 11.  Like the order granting the writ of garnishment, this order held that the Partnerships were not entitled to notice or an opportunity to be heard.

On November 29, 2011, United States Marshals levied on the real property by posting notice in conspicuous places and providing direct notice to the Partnerships, tenants, and management.  They also published notice of the levy in a local newspaper for four weeks.  This was the first notice the Partnerships received of the proceedings against their property.  The Partnerships moved to vacate the orders granting the writs of garnishment and execution and to quash the resulting writs on February 21, 2012, arguing that they were entitled to notice and an

---

[20] The *Mercurio* appeal concerned TRIA execution against a SDNT that had been designated by OFAC under the Kingpin Act.  Because the Partnerships had been designated under the IEEPA, the district court allowed garnishment against them and other IEEPA-designated SDNTs to continue.

opportunity to be heard prior to issuance of the writs and requesting an evidentiary hearing. They also argued that the district court incorrectly found them to be agencies or instrumentalities of FARC. In support, they attached an affidavit from their accountant outlining their ownership structure: 50 percent owned by Granada and 50 percent owned by Plainview. The affidavit also asserted that Granada's only capital contribution to the partnerships was its 1992 purchase of the 50 percent ownership stake and that Granada did not have access to the Partnerships' bank accounts or control over its operations. The next day, the district court stayed ruling on that motion and reminded Plaintiffs of previous orders staying execution on the real property.

On January 9, 2013, we reversed the district court in *Mercurio*. The district court then lifted the stay and ordered Plaintiffs to respond to the Partnerships' motion to vacate. Plaintiffs' response conceded that the Partnerships were entitled to "some form" of due process and argued that they had received adequate notice through the OFAC designations and the levy on the real property. Though Plaintiffs had previously argued—and the district court had agreed—that the Partnerships were not entitled to notice, the district court denied the Partnerships' request to reply to this change in Plaintiffs' argument. The district court denied the

47

Partnerships' motion to vacate on April 19, 2013.[21]  It held that the Partnerships received due process through (i) the notice of their OFAC designations, (ii) the stay of the sale of the real property, (iii) the opportunity to challenge OFAC's designations both administratively and through judicial review, (iv) "the requirement that the Plaintiffs file a motion and seek entry of a court order," and (v) the notice that came with the levy on the real property.  The court further held that OFAC's removal of the Partnerships' SDNT status was irrelevant because OFAC's regulations do not permit retroactive effect of de-listing.  *See* 31 C.F.R. § 536.402.

The Partnerships timely filed a notice of appeal on April 29, 2013.  We granted their motion to stay the sale of the real property on July 9.  On appeal, the Partnerships argue that (1) they were denied constitutional due process, (2) they

---

[21] For an order to be appealable, it must be final.  28 U.S.C. § 1291.  Writs of garnishment and orders denying relief from such writs are not appealable; typically, there is no appellate jurisdiction until the district court enters an order directing the disposition of the property.  *United States v. Branham*, 690 F.3d 633, 635 (5th Cir. 2012) (per curiam).  Because Terrabank turned over the money in the subject accounts as soon as it received the writ, there was no order from the district court directing disposition of the account.  In its place, the order denying the motion to vacate functions as a final, appealable order as to the garnishment proceedings because it "end[ed] the litigation on the merits," and there was nothing left for the court to do because the judgment was already executed.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86, 121 S. Ct. 513, 519 (2000) (internal quotation marks omitted); *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152, 85 S. Ct. 308, 311 (1964) ("[T]he requirement of finality is to be given a practical rather than a technical construction." (internal quotation marks omitted)).  It also functions as a final, appealable order for the execution writs because the only thing left to do there was hold the execution sale.  *See In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435, 1437 (11th Cir. 1986) (recognizing the "qualification of the [final judgment] rule[] allowing review whenever an order directs immediate delivery of physical property and subjects the losing party to irreparable harm" (internal quotation marks omitted)).

48

were denied statutory entitlements to notice and a hearing, (3) the agency or instrumentality standard applied by the district court was erroneous, and (4) the evidence did not support the agency or instrumentality finding.

First, contrary to the district court's decision, the notice the Partnerships received of their OFAC designation was not sufficient as to the TRIA execution proceedings. Such a designation provides notice to the designee that its assets have been blocked and of a number of other consequences, including the *potential* for TRIA execution. Having notice of the potential for proceedings without notice of their timing, location, adverse parties, nature, etc., is not sufficient to satisfy due process. The OFAC designation did not give the Partnerships notice that was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950), because it does not "give a person in jeopardy of serious loss . . . opportunity to meet" that particular proceeding, *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171–72, 71 S. Ct. 624, 649 (1951) (Frankfurter, J., concurring).

The notice conveyed to the Partnerships through the levy on their real property, however, did provide sufficient notice of the execution proceedings. The Supreme Court has specifically stated "that in most cases, the secure posting of a

notice on the property of a person is likely to offer that property owner sufficient warning of the pendency of proceedings possibly affecting his interests." *Greene v. Lindsey*, 456 U.S. 444, 452, 102 S. Ct. 1874, 1879 (1982). While a posting may not be sufficient where the notice is not conveyed due to, for example, removal of the posting by children, *see id.* at 453–54, 102 S. Ct. at 1879–80, such argument is not available where there is no evidence that the postings could not be relied upon to convey notice, *see Goldhofer Fahrzeugwerk GmbH & Co. v. United States*, 885 F.2d 858, 862 (Fed. Cir. 1989). In fact, the Partnerships not only fail to provide evidence that the postings were an unreliable means of providing notice under the circumstances; they also received actual notice and appeared. Therefore, notice as to the real property execution was adequate.[22] *See Espinosa*, 559 U.S. at 275, 130 S. Ct. at 1380.

The Partnerships were also afforded an opportunity to be heard. As discussed *supra*, the Partnerships were not entitled to a pre-writ hearing. Nevertheless, they had the opportunity to present evidence refuting the agency or instrumentality designation. They simply did not present any evidence that changed the district court's position on the agency or instrumentality determination.

---

[22] We can also infer that the Partnerships received notice of the garnishment proceedings against their accounts because their motion seeking relief from the real property execution also challenged the writs of garnishment.

50

Even if constitutional due process standards are met, the Partnerships argue that the writs of garnishment and execution should be quashed for failure to comply with Florida's statutory requirements for garnishment and execution. Despite the fact that the district court erred in holding that Florida law did not apply, the circumstances indicate that the decision was harmless. The Partnerships were not prevented from taking advantage of Florida law specifically providing for third-party challenges to garnishment proceedings. *See* Fla. Stat. § 77.07(2). The third party can move to dissolve the writ of garnishment by "stating that any allegation in plaintiff's motion for writ is untrue." *Id.* If the relevant allegation— here, agency or instrumentality status—is found to be untrue, the court dissolves the writ. *Id.* The Partnerships followed this procedure, and the district court, after due consideration of their argument, concluded that the agency or instrumentality allegation was "proved to be true." *See id.* It therefore properly denied the motion to dissolve the writ. Any failure by the district court to conform to Florida's notice procedures was harmless because the Partnerships received actual notice and were able to contest the allegations as provided in § 77.07; they merely failed to succeed on the merits.

The execution of the real property was likewise proper under Florida law. The Partnerships complain that Plaintiffs did not furnish the required affidavit, rendering the execution invalid. *See* Fla. Stat. § 56.21; *cf. In re King*, 463 B.R.

51

555, 566 (Bankr. S.D. Fla. 2011) (setting aside an execution sale where judgment creditors failed to comply with the § 56.21 30-day requirement). However, "[w]hen a particular provision of a statute relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the directions of a statute are given with a view to the . . . conduct of business merely, the provision may generally be regarded as directory" and not mandatory. *Neal v. Bryant*, 149 So. 2d 529, 532 (Fla. 1962) (internal quotation marks omitted) (noting the exception to the generally mandatory nature of statutory directives introduced by the word "shall"). Here, we know that failure to provide the affidavit was harmless because the Partnerships had actual notice of the execution proceedings and simply failed to disprove the agency or instrumentality allegations over the months between their receipt of notice and the district court's denial of their motions. Therefore, any failure to comply with statutory notice requirements is not grounds for reversal.

The Partnerships, moreover, were afforded an opportunity to present evidence to the district court rebutting Plaintiffs' allegation that they were agencies or instrumentalities of FARC. In fact, the Partnerships presented evidence of their ownership, presumably under the incorrect understanding that § 1603(b) would control for TRIA § 201. As discussed above regarding the writs of garnishment,

52

the court properly found that evidence immaterial to the agency or instrumentality allegation.

The Partnerships also argue that there was not a sufficient evidentiary basis for the agency or instrumentality determination.  This argument is unavailing.  The evidence Plaintiffs presented to the district court was sufficient to establish the required relationship between FARC and the Partnerships, even if that relationship was indirect.  *Cf. In re Air Crash Disaster Near Roselawn, Ind., on Oct. 31, 1994*, 96 F.3d 932, 940–41 (7th Cir. 1996) (holding that an entity majority-owned by an agency or instrumentality of a foreign state is itself an agency or instrumentality of that foreign state under the FSIA).  The district court therefore did not clearly err in reaching the agency or instrumentality determination.

The remaining arguments raised by the Partnerships are meritless for reasons set forth in the global discussion.  Therefore, we affirm the district court and lift the stay we imposed by order.

## C.    No. 13-11959 (Jamce Investments, Ltd., et al.)

The appellants here assert ownership of cash deposits held at various banks. The organizational appellants are the Partnerships, Granada, Confecciones Lord S.A. (Lord), ALM Investment Florida, Inc. (ALM), Villarosa Investments Florida, Inc. (Villarosa), Karen Overseas, Inc. (Overseas), MLA Investments, Inc. (MLA), Jacaria Florida, Inc. (Jacaria), Sunset & 97th Holdings, LLC (Sunset), and Jamce

Investments, Ltd. (Jamce) (collectively, "the Organizations). The individual appellants are Jacqueline Saieh (Jacqueline), Miriam Sutherlin (Miriam), Sandra Saieh (Sandra), Laura Saieh (Laura), Karen Saieh (Karen), Kathya Saieh (Kathya), Jaime Saieh (Jaime), Amelia Saieh (Amelia), Abdala Saieh (Abdala), Carlos Saieh (Carlos), Carmen Siman de Jaar (Carmen), Armando Jaar (Armando), Ricardo Jaar (Ricardo), and Moises Saieh (Moises) (collectively, "the Individuals").[23]

These appellants were all OFAC-designated SDNTs when Plaintiffs filed ex parte motions for writs of garnishment against their blocked assets under TRIA on September 7, 2011. Fifteen of the writs were issued to Terrabank as to accounts held by Ricardo, Armando, Moises, Carlos, Carmen, Abdala, Jacaria, Lord, MLA, Granada, Overseas, Villarosa, the Partnerships, and ALM. Five more were issued to OceanBank, N.A. as to accounts held by Carmen, Abdala, Moises, Carlos, Sunset, and ALM. One was issued to Wells Fargo, N.A. as to an account held by Jamce. After obtaining OFAC's approval, Terrabank turned the contents of the accounts over to Plaintiffs' attorneys without filing an answer to the writs on

---

[23] Some of the Individuals have asserted standing to challenge the writ of garnishment issued to Wells Fargo as to Jamce, claiming that Jamce was a trust and that they were its beneficiaries. The district court rejected that assertion, finding that Jamce was a corporation. *See KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1324–25 (11th Cir. 2004) (recognizing that corporations themselves—and not shareholders—are the only parties with standing as to injuries against them). The Individuals give us no reasons to disturb that finding. Accordingly, only Jamce has standing to challenge the issuance of a writ of garnishment against its account. The Individuals with no personal interest in any of the assets garnished pursuant to the orders at issue, Jacqueline, Miriam, Sandra, Laura, Karen, Kathya, Jaime, and Amelia, therefore do not have standing. The other Individuals do not have standing to the extent that they challenge the writ issued as to Jamce.

September 23, 2011.  The other banks filed answers, but the court entered turnover

judgments against them as to all writs.  After judgment was entered, a number of

motions were filed seeking relief from the judgments.  The final orders on appeal

here are an order discharging Terrabank, two turnover judgments, four orders

denying Rule 60(b) motions[24], and the denial of Jamce's Rule 59(e) motion.  The

order discharging Terrabank and the first turnover judgment were not timely

appealed, and we therefore do not have jurisdiction to consider them.  Fed. R. App.

P. 4(a).  Thus, only the later-in-time turnover judgment (against Jamce's Wells

Fargo account), the denials of the Rule 60(b) motions, and the denial of Jamce's

Rule 59(e) motion are at issue here.[25]

---

[24] The Rule 60(b) motions were also filed pursuant to Rules 59(e) and 69(a)(1).  The district court correctly declined to consider the motions under Rule 59(e) because they were not timely filed.  *See* Fed. R. Civ. P. 59(e); *Wright v. Preferred Research, Inc.*, 891 F.2d 886, 890 (11th Cir. 1990) (per curiam) (construing the old Rule 59(e), which included a deadline of 10 days after entry of judgment).  Further, failure to comply with statutory law pursuant to Rule 69(a)(1) is not sufficient grounds to set aside a judgment under Rule 60(b)(4); the movant must demonstrate denial of due process or a jurisdictional error.  *Espinosa*, 559 U.S. at 271, 130 S. Ct. at 1377; *Am. Bankers Ins.*, 198 F.3d at 1338 ("An appeal of a ruling on a Rule 60(b) motion . . . does not raise issues in the underlying judgment for review.").  We note that these appellants do not argue that the district court "lacked even an arguable basis for jurisdiction."  *See Espinosa*, 559 U.S. at 271, 130 S. Ct. at 1377 (internal quotation marks omitted).  Their Rule 60(b)(4) motions, then, rest on an alleged denial of due process because they make no other argument that would constitute grounds for setting aside the judgment under Rule 60(b)(4).

[25] For an order to be appealable, it must be final.  28 U.S.C. § 1291.  With respect to the writs issued to OceanBank and Wells Fargo, finality was accomplished when the district court entered turnover judgments against them after receiving their answers to the writs.  Writs of garnishment and orders denying relief from such writs are not appealable; typically, there is no appellate jurisdiction until the district court enters an order directing the disposition of the property.  *Branham*, 690 F.3d at 635.  Because Terrabank turned over the money in the subject accounts as soon as it received the writ, there was no order from the district court directing disposition of the account.  In its place, the order discharging Terrabank functions as a final, appealable order because it "end[ed] the litigation on the merits," and there was nothing left for

Jamce appeals a turnover judgment entered against an account it held at Wells Fargo. However, Jamce waived any opposition to Plaintiffs' motion seeking entry of judgment on the writ of garnishment when, after receiving notice of the motion through counsel, it failed to timely respond to the motion. The day after the district court entered the judgment, Jamce filed a Rule 59(e) motion, which the district court denied, specifically noting the electronic notice provided. Jamce appealed the judgment itself on the day it was issued and later amended the notice of appeal to include the Rule 59(e) motion denial. Because Jamce waived opposition to the motion seeking entry of judgment, we affirm the judgment. Further, a Rule 59(e) motion cannot be used simply as a tool to reopen litigation where a party has failed to take advantage of earlier opportunities to make its case. *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). Therefore, we also affirm the order denying Jamce's Rule 59(e) motion.

A number of the Individuals and Granada appeal the order denying their Rule 60(b) motion to set aside the execution of the real property owned by the Partnerships. In the denial, the district court held that they did not have standing because they did not own the real property under Florida law. The appellants do

---

the court to do because the judgment was already executed. *See Randolph*, 531 U.S. at 86, 121 S. Ct. at 519 (internal quotation marks omitted); *Gillespie*, 379 U.S. at 152, 85 S. Ct. at 311. Additionally, the denials of the Rule 60(b) motions are appealable. *Am. Bankers Ins.*, 198 F.3d at 1338. Rule 59(e) motion denials are likewise appealable.

56

not challenge that determination here, and they have thus waived argument on that issue. *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995).

On November 2, Carmen, Armando, Ricardo, Carlos, and Moises moved to quash the garnishment, to reconsider the order granting Plaintiffs' motion for an issuance of writs of garnishment, for relief from judgment, to set aside the judgment, to stay the garnishment, and to deposit garnished funds into the court registry. On November 21, they also moved to alter judgment, to amend or correct the order on Plaintiffs' motion for judgment, to stay execution, and to deposit garnished funds into the court registry. After the stay discussed above was lifted, the district court denied the motions on April 9 and 12, 2013, respectively. The Organizations brought a similar motion seeking relief on April 30, 2012, and the district court denied it on April 25, 2013.

The appeal of those remaining orders—all denying Rule 60(b) motions— also fails. Contra the argument of these appellants, TRIA § 201 permits execution against the assets of parties not named in the original lawsuit; that is the purpose of the specific allowance for execution against agencies or instrumentalities provided by that section. *See Mercurio*, 704 F.3d at 913 & n.5 (citing *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010)).

The appellants' arguments regarding an alleged denial of due process also lack merit because any such violation was harmless. As we concluded in the

57

global discussion, no pre-deprivation hearing was warranted. Moreover, the appellants here had sufficient opportunities to present their arguments to the district court. Ultimately, the district court gave due consideration to these arguments.

The district court made the factual determination that each of the appellants in this appeal was an agency or instrumentality of FARC. Even if the appellants had given us reason to believe that that determination was clear error (they have not), they certainly do not give us reason to believe that such error is grounds for setting aside a judgment. The remaining grounds advanced by the appellants for reversing the district court are meritless, as detailed in the global discussion.

The turnover judgment as to Jamce's property was properly entered after Jamce defaulted. The Rule 60(b) motions do not establish any grounds on which we may grant such extraordinary relief. We therefore affirm the orders from which this appeal is brought.

### D.    No. 13-12337 (Sutherlin)

Luis Sutherlin claims that Jamce is a trust, that he is its beneficiary, and that he is thus entitled to challenge the execution of assets owned by Jamce. However, the district court found that Jamce is a corporation. Sutherlin does not give us reason to disturb that finding. Therefore, only Jamce has standing to challenge the execution of its assets. *See KMS Rest. Corp.*, 361 F.3d at 1324–25 (recognizing

58

that corporations themselves—and not shareholders—are the only parties with standing to contest injuries to the corporation).  Consequently, this appeal is dismissed.

### E.    No. 13-12116 (Individual Claimants)

The appellants here appeal a series of turnover judgments for accounts in the names of Carmen, Carlos, Armando, and Moises at UBS AG, Bank of America (BOA), and HSBC Bank USA, N.A. (HSBC), as well as an order denying a Rule 59(e) motion.[26]  All the appellants party to this appeal were SDNTs when Plaintiffs initiated garnishment proceedings against them.  Significantly, the appellants made appearances in the district court after receiving notice of the garnishment proceedings and well before judgment was entered against them.  First, they filed a motion to quash the writs of garnishment issued to UBS and BOA on November 2, 2011.  Then, on February 12, 2013, they filed a brief opposing a lift of the stay.  Finally, they filed multiple motions opposing entry of judgment.

As an initial matter, the district court's denial of the Rule 59(e) motion on jurisdictional grounds was not proper.  The district court based that decision on *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 402 (1982) (per curiam).  The district court quoted that opinion's language for the

---

[26] They also appeal an order denying relief from a writ of garnishment issued to BOA as to an account held by Brunello.  We address that writ and the associated turnover judgment below.

59

proposition that the filing of a notice of appeal divested it of jurisdiction to consider the Rule 59 motion. *Id.* ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). However, *Griggs* was based on the language of an old version of Federal Rule of Appellate Procedure 4, which provided that a notice of appeal filed during the pendency of a Rule 59 motion would have no effect. In 1993, Rule 4(a) was specifically amended in response to *Griggs* and now provides that a notice of appeal filed during the pendency of a Rule 59 motion is simply suspended. *See Katerinos v. U.S. Dep't of Treasury*, 368 F.3d 733, 737–38 (7th Cir. 2004) ("The rule therefore was amended in 1993 to provide that a premature notice of appeal is no longer void, but merely suspended; it becomes effective . . . when the order disposing of the last such remaining motion is entered." (internal quotation marks omitted)); *see also* Fed. R. App. P. 4(a)(4)(B)(i). The district court retained jurisdiction to consider the Rule 59 motion, and we have jurisdiction because the notice of appeal became effective following the district court's denial of that motion. In addition, the appellants here filed amended notices of appeal after the district court disposed of the Rule 59(e) motion giving us jurisdiction to consider the appeal of the denial. *See Stallworth v. Shuler*, 758 F.2d 1409, 1410 (11th Cir. 1985) (per curiam).

60

The appellants here first claim that their due process rights were violated by the district court's failure to provide them with notice and an opportunity to be heard.  Notwithstanding their complaints about lack of formal service, any failure to provide notice was harmless because the appellants received actual notice and appeared.  First, they filed a motion to quash the writs of garnishment issued to UBS and BOA on November 2, 2011.  Then, on February 12, 2013, they filed a brief opposing a lift of the stay.  Finally, they filed multiple motions opposing entry of judgment.  Therefore, because they appeared, the appellants were not prejudiced by the lack of notice because they received actual notice.  *Cf. Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976) (holding that a party's voluntary appearance "waiv[ed] any potential defects founded on service or venue problems").

The Rule 59(e) motion does not save the appellants, either.  We review denials of Rule 59(e) motions for an abuse of discretion.  *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983) (per curiam).  The district court's denial of the Rule 59(e) motion based on a miscomprehension of the law was an abuse of discretion.  *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008).  However, we affirm the denial on the merits.  *See Parks v. City of Warner Robins*, 43 F.3d 609, 613 (11th Cir. 1995) ("[W]e may affirm the district court's decision on any adequate ground, even if it is other than the one on which the court

61

actually relied."). The appellants here simply failed to litigate the agency or instrumentality issue when they had notice of the proceedings. They then attempted to use the Rule 59(e) motion to reopen litigation, an improper basis for moving under Rule 59(e). *Michael Linet, Inc.*, 408 F.3d at 763 (holding that a party "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"). We thus affirm the denial of the motion.

The appellants here also contend that they were improperly designated as agencies or instrumentalities. We have already determined that the district court applied the correct standard. Moreover, we cannot say that the district court clearly erred in making the factual determination that they were agencies or instrumentalities of FARC. Plaintiffs proffered evidence of connections to FARC that met the district court's standard, and the appellants here failed to rebut that evidence.

Finally, any other arguments raised do not support reversal. Therefore, we affirm the district court's orders at issue in this appeal.

### F.    No. 13-12171 (Brunello)

Brunello, Ltd. is a Caymanian corporation that was designated a SDNT on November 8, 2006, for alleged ties to the NVC. It began the de-listing process soon after that. Plaintiffs moved for a writ of garnishment against BOA on

September 15, 2011, where they believed Brunello held a blocked asset. The district court issued the writ on September 20, 2011. BOA answered the writ claiming that it was indebted to Brunello. On November 16, it amended the answer, disclaiming any debt owed to Brunello and informing the district court and Plaintiffs that Merrill Lynch, Pierce, Fenner & Smith, Inc., (Merrill Lynch) was indebted to Brunello. BOA had mistakenly reported to OFAC that it held an asset belonging to Brunello; Brunello actually held the account in question with Merrill Lynch. Both BOA and Merrill Lynch are wholly owned subsidiaries of Bank of America Corporation.

Meanwhile, Brunello had successfully challenged its OFAC designation, which was reflected in OFAC's updated SDNT list, published on January 10, 2012. Brunello then moved to dissolve the writ of garnishment on January 23, 2013, asserting that BOA did not possess any of its assets. On January 29, while that motion was pending, Plaintiffs moved to amend the writ of garnishment to add Merrill Lynch as a party indebted to Brunello. Brunello filed its opposition to that motion on January 30, and, the next day, the district court denied Brunello's motion to quash and granted Plaintiffs' motion to amend. The clerk issued the amended writ on March 13. Merrill Lynch was served on April 8. The district court entered a turnover judgment against Merrill Lynch on May 6, and Brunello timely filed an appeal. While Brunello raises many of the same arguments

63

discussed above, it uniquely asserts that the district court improperly related back,

*nunc pro tunc*, the writ of garnishment.  Because we agree with Brunello on that

point, we reverse the turnover judgment and remand to the district court with

instructions to quash the underlying writ of garnishment and return any turned over

funds.

The purpose of a *nunc pro tunc* order is not "to revise history, but only to

correct inaccurate records."  *Justice v. Town of Cicero*, 682 F.3d 662, 664 (7th Cir.

2012) (internal quotation marks omitted).

> A *nunc pro tunc* order merely recites court actions previously taken
> but not properly or adequately recorded.  The failure of a court to act,
> or its incorrect action, can never authorize a *nunc pro tunc* entry.  If a
> court does not render judgment or renders one which is imperfect or
> improper, it has no power to remedy any of these errors or omissions
> by treating them as clerical misprisions.

*Cypress Barn, Inc. v. W. Elec. Co.*, 812 F.2d 1363, 1364 (11th Cir. 1987) (citation

and internal quotation marks omitted).  In other words, a *nunc pro tunc* order's

"purpose . . . is to correct mistakes or omissions in the record so that the record

properly reflects the events that *actually took place*."  *Glynne v. Wilmed*

*Healthcare*, 699 F.3d 380, 383–84 (4th Cir. 2012).  It cannot change substantive

rights retroactively.  *See Transamerica Ins. Co. v. South*, 975 F.2d 321, 325–26

(7th Cir. 1992).

Here, the *nunc pro tunc* order substituted a new party that actually was

indebted to Brunello for one that was not.  A *nunc pro tunc* order that has the effect

64

of retroactively inserting in a writ a garnishee who was never mentioned in the original writ, was not a party to the proceedings, and was never served with the original writ is perhaps the most obvious violation of the limitations on the doctrine. Such an order does not "merely recite[] court actions previously taken but not properly or adequately recorded," *Cypress Barn*, 812 F.2d at 1364, "correct inaccurate records," *Justice*, 682 F.3d at 664 (internal quotation marks omitted), or "reflect[] the events that *actually took place*," *Glynne*, 699 F.3d at 384. Rather, it "revise[s] history," *Justice*, 682 F.3d at 664, "to remedy [an] error" borne of "its incorrect action," *Cypress Barn*, 812 F.2d at 1364 (internal quotation marks omitted). It works an injustice on the parties that were not earlier named in the writ; it does not correct, in Plaintiffs' words, a mere "wrinkle." *See Sage v. Cent. R.R. Co. of Iowa*, 93 U.S. 412, 417 (1876) ("While it is true that the court may enter an order in a cause *nunc pro tunc*, where the action asked for has been delayed by or for the convenience of the court, it is never done where the parties themselves have been at fault, or where it will work injustice." (citations omitted)).

In response to Brunello's argument that the *nunc pro tunc* order was entered improperly, Plaintiffs allege that the garnishee originally named in the writ, BOA, answered the writ in a "misleading" fashion and engaged in "questionable conduct." Assuming that claim is true, it is irrelevant. The proper garnishee was a

65

completely separate entity.[27]  It is immaterial that both garnishees were owned by the same entity or that BOA may have misled Plaintiffs.

Thus, the motion for a writ of garnishment against Merrill Lynch was filed on the date it was filed, not the date on which the writ against BOA was filed, which came after Brunello's de-listing.  For that reason, TRIA § 201's requirement that the subject asset is "blocked" was not met as a matter of law.  *See Holy Land Found.*, 722 F.3d at 687.  We reverse the turnover judgment and remand to the district court with instructions to quash the writ of garnishment.

## IV.    Conclusion

In the proceedings below, it seems no party was free of fault.  Plaintiffs should have provided formal notice of the garnishment and execution proceedings to the owners of the property, as Florida law provides.  Initially, the district court incorrectly concluded that no process was due to the owners of property here, none of whom could be deemed to be on notice of the underlying proceedings against FARC.  Ultimately, though, Claimants bear their share of the blame for either sitting on their rights to challenge the allegations against them or simply failing to rebut the charges.  Therefore, with the exception of the turnover judgment against Brunello's account, we affirm the district court.

---

[27] The district court did not determine that BOA and Merrill Lynch were alter egos.

**AFFIRMED IN PART; DISMISSED IN PART; REVERSED AND REMANDED IN PART.**