[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13947

_____

D.C. Docket No. 4:19-cv-10140-JLK

SUSAN LYNNE ROHE,

Petitioner – Appellant,

versus

WELLS FARGO BANK, N.A.,

Respondent – Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 18, 2021)

Before WILSON, GRANT, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

This case requires us to consider under what conditions a district court has the power to issue an order under the All Writs Act, 28 U.S.C. § 1651(a). Petitioner Rohe alleges that after she filed for bankruptcy, Wells Fargo violated the automatic bankruptcy stay by continuing with foreclosure proceedings against her in the Florida state courts. She also claims that Wells Fargo and the state courts acted contrary to federal law governing removal by continuing with the same state-court proceedings after she sought to remove the state case to the bankruptcy court. On the basis of these allegations, Rohe filed a petition for a writ under the All Writs Act in the District Court, seeking an order declaring that certain actions of the state courts were void and granting Rohe damages against Wells Fargo and its counsel. We find that this case is not the kind of case in which an order under the Act could properly be issued because there is no underlying proceeding over which the District Court has jurisdiction and the integrity of which the District Court would be in an appropriate position to protect by making such an order. We therefore affirm the District Court's dismissal of the case.

I.

A.

The history of this case is rather complex. Wells Fargo previously brought a

2

state-court foreclosure action against Rohe in 2013.  That lawsuit was dismissed in 2016 since Wells Fargo could not establish that it was the holder of Rohe's mortgage, which had been issued by another bank.  The mortgage note contained an undated endorsement to Wells Fargo bearing the stamped signature of a representative of the original lender, but the court found that the signature was not authentic.

To correct this deficiency, Wells Fargo transferred the note back to the original lender's successor, which canceled all endorsements on the note and executed a new endorsement to Wells Fargo.  Wells Fargo then filed a second foreclosure suit against Rohe; it is this suit that gave rise to the events underlying the present case.  The state trial court ruled that the new endorsement was effective and that Wells Fargo now had standing to foreclose.  The court granted a judgment of foreclosure in December 2018, which Rohe appealed to the Third District Court of Appeal ("DCA") of Florida in January 2019.

## B.

In February 2019, Rohe filed for bankruptcy under Chapter 13 in the Bankruptcy Court for the Southern District of Florida.  Initiating a bankruptcy case automatically stays creditors' claims pursuant to 11 U.S.C. § 362(a), which provides that the bankruptcy petition "operates as a stay, applicable to all entities,"

3

of, among other things, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case."  In response to Rohe's bankruptcy filing, the state trial court placed the foreclosure action on inactive status and cancelled the impending foreclosure sale.  In June, Rohe also moved the Third DCA for a stay or abatement of her appeal.  However, the Third DCA's precedent held that the automatic stay does not apply to appeals brought by a debtor, on the ground that such an appeal is not a proceeding "against" the debtor within the meaning of § 362(a), *see Shop in the Grove, Ltd. v. Union Fed. Sav. & Loan Ass'n of Miami*, 425 So. 2d 1138, 1139 (Fla. 3d Dist. Ct. App. 1982),[1] and the court accordingly denied Rohe's motion.

Shortly thereafter, on July 3rd, the bankruptcy court granted Wells Fargo relief from the automatic stay for the purpose of proceeding with the foreclosure action.  The next month the bankruptcy court denied Rohe's motion to reconsider as well as her earlier motion to enforce the automatic stay, explaining that "[t]here is no automatic stay in effect as to Wells Fargo" because the relevant property "is not included in the Debtor's Chapter 13 plan."  Rohe subsequently appealed the bankruptcy court's order to the District Court.

---

[1] The Third DCA has now overruled this precedent.  *Nat'l Med. Imaging, LLC v. Lyon Fin. Servs., Inc.*, No. 3D20-730, 2021 WL 113382 (Fla. 3d Dist. Ct. App. Jan. 13, 2021).

Furthermore, on July 14th, Rohe filed a notice of removal with the bankruptcy court and the Third DCA to remove the foreclosure case[2] to the bankruptcy court as a matter related to the bankruptcy under 28 U.S.C. § 1452(a).[3] When a case is removed to federal court, the state court ceases to have jurisdiction and proceedings in the state court are stayed until the case is remanded.[4]  As Federal Rule of Bankruptcy Procedure 9027(c) provides,

> Removal of the claim or cause of action is effected on such filing

---

[2] Rohe's briefing describes what she did as removing the "appellate case" from the Third DCA; the notice of removal also focuses on the appeal but begins by formally identifying the "state court action" being removed as both the appellate case and the trial court case, giving the captions and case numbers for both.  This Circuit has in certain circumstances approved removal of cases in which final judgment had been entered by the state trial court but there remained time to take an appeal to the state appellate court.  *In re Savers Fed. Sav. & Loan Ass'n*, 872 F.2d 963, 965-66 (11th Cir. 1989) (allowing post-judgment removal under the special removal statute applicable to the Federal Savings and Loan Insurance Corporation); *Jackson v. Am. Sav. Mortg. Corp.*, 924 F.2d 195 (11th Cir. 1991) (allowing removal of a case in which the state appeal and the removal were filed on the same day, without discussing the issue of the pending appeal); *Ware v. FleetBoston Fin. Corp.*, 180 F. App'x 59, 61 (11th Cir. 2006); *see also FDIC v. Keating*, 12 F.3d 314, 316-17 (1st Cir. 1993) (allowing removal despite a pending appeal); *cf. Aurora Loan Servs., LLC v. Allen*, 762 F. App'x 625, 627-28 & n.3 (11th Cir. 2019) (noting that our precedent on post-judgment removal has been in the context of financial institution receiver cases).

[3] While § 1452(a) technically provides for removal to the district court, district courts are permitted under 28 U.S.C § 157(a) to refer any or all cases related to a bankruptcy case to the bankruptcy judges.  The Southern District of Florida has promulgated a local rule referring all such cases to the District's bankruptcy judges and providing that when a claim or cause of action is removed under the bankruptcy removal statute, the notice of removal is to be filed with the bankruptcy court and the case is to be docketed as an adversary proceeding in the bankruptcy court.  S.D. Fla. L.R. 87.2(a).

[4] Upon the filing of a notice of removal, "the jurisdiction of the state court absolutely ceases" and "[a]ny subsequent proceedings in state court on the case are void *ab initio*."  *Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1254-55 (11th Cir. 1988) (citing *Steamship Co. v. Tugman*, 106 U.S. 118, 122, 1 S. Ct. 58, 60 (1882)).  This rule applies regardless of whether the case is in fact removable: "the filing of a removal petition [now designated a notice of removal] terminates the state court's jurisdiction until the case is remanded, even in a case improperly removed."  *Id.* at 1254 n.11.

5

[with the clerk of the court from which the claim or cause of action is removed] of a copy of the notice of removal.  The parties shall proceed no further in that court unless and until the claim or cause of action is remanded.[5]

On August 21st, before any action by the bankruptcy court, the Third DCA nevertheless issued a per curiam order affirming the state trial court's judgment of foreclosure and also granting Wells Fargo's motion for appellate attorneys' fees. Two days later, the state trial court restored the foreclosure case to active status and rescheduled the foreclosure sale.

The removal process instituted a new adversary proceeding in the bankruptcy court.  Wells Fargo moved to dismiss this proceeding, claiming that the case, as a state-court appeal, was not removable.  On September 4th, the bankruptcy court granted the motion and dismissed the adversary proceeding with prejudice and "*nunc pro tunc* to July 14, 2019," the date when the adversary was

---

[5] Compare the parallel provision in the ordinary removal statute:
Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.
28 U.S.C. § 1446(d).  In a plurality opinion, the Supreme Court has stated that "[t]he statutory procedures for removal of a case from state court to federal court provide that the removal acts as a stay of the state-court proceedings." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 640, 97 S. Ct. 2881, 2892 (1977) (plurality opinion) (citing 28 U.S.C. § 1446(e), now § 1446(d)).  The Court has also long held that federal courts have the power to enjoin state-court proceedings in removed cases. *See Mitchum v. Foster*, 407 U.S. 225, 234 & n.12, 92 S. Ct. 2151, 2157-58 (1972).

opened and the notice of removal filed.[6]  Despite the bankruptcy court's apparent

belief that the case had not been properly removed, it did not remand the case to

the state courts.  The order of dismissal was also appealed by Rohe to the District

Court.

C.

We come thus to the beginning of the particular case before us now.  On

August 26th, Rohe filed a "Petition for Writ of All Writs" in the District Court for

the Southern District of Florida seeking an order under the All Writs Act.  The

petition was framed as commencing an independent civil action against Wells

Fargo, separate from the bankruptcy case or any appeal of bankruptcy court orders.

Rohe asserted that the District Court had jurisdiction of the petition under §

1651 (the All Writs Act), Article III of the Constitution, and § 14 of the Judiciary

---

[6] We would note that a *nunc pro tunc* order cannot be used to make a court action effective as of an earlier date at which the court did not actually take any relevant action.  "A *nunc pro tunc* order merely recites court actions previously taken but not properly or adequately recorded." *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 747 (11th Cir. 2014).  Its purpose "is to correct mistakes or omissions in the record so that the record properly reflects the events that *actually took place*." *Id.* (quoting *Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383-84 (4th Cir. 2012)).  "Put colorfully, nunc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact." *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020) (internal quotation mark omitted) (alteration adopted).

Act of 1789 (the predecessor of § 1651[7]).[8]  The petition alleged that Wells Fargo

had knowingly violated the automatic stay by continuing to litigate the foreclosure

case after being made aware of the bankruptcy, for instance by opposing Rohe's

motion for a stay of her appeal.  It also claimed that the Third DCA had knowingly

violated the automatic stay.  In connection with these allegations, the petition

invoked 11 U.S.C. § 362(k)(1), which provides that "an individual injured by any

willful violation of a stay provided by this section shall recover actual damages,

including costs and attorneys' fees, and, in appropriate circumstances, may recover

punitive damages."  Moreover, Rohe alleged that the Third DCA's order disposing

of her appeal was void insofar as that court lacked jurisdiction of the case after it

was removed to the bankruptcy court.  Wells Fargo was also alleged to have

violated Rohe's removal rights by arranging for a foreclosure sale in the state trial

court.  As relief for these asserted violations of law, Rohe's petition sought an

order (1) declaring that the Third DCA's order affirming the judgment of

foreclosure and awarding appellate attorneys' fees was void *ab initio*, (2) declaring

that the state trial court's order rescheduling the foreclosure sale was void *ab initio*,

(3) granting Rohe damages against Wells Fargo and its counsel for willful

---

[7] *See Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40-41, 106 S. Ct. 355, 360 (1985).

[8] The petition's jurisdiction section also includes a reference to 28 U.S.C. § 1334(a).  The relevance of this reference is unclear since § 1334(a) only concerns jurisdiction over "cases under title 11," i.e., the bankruptcy case itself.  *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987).

8

violation of the automatic stay and for setting the foreclosure sale, and (4) "[f]ashioning any other relief in the form of sanctions that this Court deems appropriate to ensure future compliance with federal laws."

The District Court issued a *sua sponte* order dismissing Rohe's petition with prejudice on September 19th. The Court found that it lacked jurisdiction over the petition under the *Rooker-Feldman* doctrine. This doctrine reflects the fact that federal courts other than the Supreme Court do not possess appellate jurisdiction over state-court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84, 125 S. Ct. 1517, 1521 (2005). The *Rooker-Feldman* rule bars "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06, 114 S. Ct. 2647, 2654 (1994). The District Court observed that "Rohe has expressly requested this Court to void state court decisions that she perceives to violate federal law." It therefore reasoned that "[t]he instant case effectively amounts to an appeal of a state court judgment, which this Court has no jurisdiction to entertain."

This appeal followed.

II.

9

We affirm the District Court's order, though not for the reasons stated by that Court. *See Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1157 (11th Cir. 2006). This case must be dismissed because Rohe's petition simply does not present the kind of case in which the All Writs Act can be invoked. We first review some of the general principles guiding the use of the All Writs Act and then discuss how those principles apply to the present case.

A.

The All Writs Act, now codified as 28 U.S.C. § 1651(a), states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The purpose of the All Writs Act is to allow courts to protect their jurisdiction, that is, to safeguard the integrity of their proceedings and judgments. As we have stated, "The Act does not create any substantive federal jurisdiction. Instead, it is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) (citation omitted); *see Clinton v. Goldsmith*, 526 U.S. 529, 534-35, 119 S. Ct. 1538, 1542 (1999) (a court's power under the Act is confined to "issuing process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction"). The Act empowers courts to "safeguard not only ongoing

10

proceedings, but potential future proceedings," *Klay*, 376 F.3d at 1099, as well as to "protect or effectuate" their prior orders and judgments, *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993); *see United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172, 98 S. Ct. 364, 372 (1977) (a court may "issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained").

The All Writs Act accordingly constitutes a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of law.'" *Harris v. Nelson*, 394 U.S. 286, 299, 89 S. Ct. 1082, 1090 (1969) (quoting *Price v. Johnston*, 334 U.S. 266, 282, 68 S. Ct. 1049, 1058 (1948)). Under the Act, "[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273, 63 S. Ct. 236, 239 (1942). The "supplemental powers" thus provided "are not limited to those situations where it is 'necessary' to issue the writ or order 'in the sense that the court could not otherwise physically discharge its . . . duties.'" *N.Y. Tel. Co.*, 434 U.S. at 173, 98 S. Ct. at 372-73 (quoting *Adams*, 317 U.S. at 273, 63 S. Ct. at 239). Indeed, the Act supplies authority to issue orders directed, "under

11

appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice" and "even those who have not taken any affirmative action to hinder justice." *Id.* at 174, 98 S. Ct. at 373. At the same time, the availability of a writ under the Act is limited by the Act's supplemental character. "The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law." *Clinton*, 526 U.S. at 537, 119 S. Ct. at 1543. Moreover, the Act "is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43, 106 S. Ct. 355, 361 (1985).

B.

It is convenient to distinguish between two broad kinds of situations in which All Writs Act orders may be employed: (1) the use of the Act in a court's appellate capacity, generally to direct action by another court whose proceedings are subject to appellate review by the court issuing the order; and (2) the non-appellate use of the Act to directly protect the issuing court's own proceedings and judgments. In both situations invocation of the Act is predicated on the existence

of some underlying proceeding over which the issuing court has jurisdiction—either a proceeding in that court or a proceeding in another court or adjudicative body that could potentially come before the issuing court for review.

The appellate use of the Act, typically through a writ of mandamus or prohibition, is the most common and most widely discussed. *See generally* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3932 (3d ed. 2012). An All Writs Act order of this kind controls the relevant proceedings in the lower court but also protects the appellate court's own jurisdiction, seeing as the case must be "one that may lie within [its] prospective future jurisdiction . . . or that has in fact come within its jurisdiction in the past." *Id.*[9] There are a wide variety of ways in which such orders might need to be employed. It has been held that mandamus may be granted in an appropriate case, for instance, to quash a subpoena improperly compelling personal testimony from the head of a government agency, *In re United States*, 985 F.2d 510 (11th Cir. 1993) (per curiam), to overturn an attorney disqualification order, *In re BellSouth Corp.*, 334 F.3d 941, 953-54 (11th Cir.

---

[9] The description of the appellate use of the Act given here is only a summary subject to qualifications, since the body of law involved is complex. Such use of the Act can also encompass orders directed toward other parties rather than the lower court. *See FTC v. Dean Foods Co.*, 384 U.S. 597, 603-05, 86 S. Ct. 1738, 1742-43 (1966). In addition, the basis for the appellate court to avail itself of the Act may be a proceeding in an agency as opposed to a court. *See* 33 CHARLES ALAN WRIGHT, CHARLES H. KOCH, JR., & RICHARD MURPHY, FEDERAL PRACTICE AND PROCEDURE § 8313 (2d ed. 2018).

13

2003), to vacate a statutorily unauthorized sentence, *United States v. Denson*, 603 F.2d 1143 (5th Cir. 1979) (en banc),[10] and to vacate an order allowing putative class action plaintiffs to advertise their allegations to the public and send mass mailings to employees of the defendant prior to class certification, *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997).

The general standards governing an appellate court's grant of such an All Writs Act order are strict and well-established. We have stated that a writ of mandamus "is a '"drastic and extraordinary" remedy' that is available only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *United States v. Shalhoub*, 855 F.3d 1255, 1263 (11th Cir. 2017) (citations omitted) (first quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380, 124 S. Ct. 2576, 2586 (2004); then quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S. Ct. 188, 190 (1980)). "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy." *Cheney*, 542 U.S. at 380, 124 S. Ct. at 2587 (internal quotation marks and citations omitted). A writ of mandamus may be issued only if three conditions

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

are satisfied:

> First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process.  Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable.  Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Id.* at 380-81, 124 S. Ct. at 2587 (internal quotation marks and citations omitted) (alterations adopted).

The direct, non-appellate use of the Act, on the other hand, is what a petition for an extraordinary writ in a district court would usually be seeking.  The fundamental features of such non-appellate invocation of the Act are well described by our opinion in *Klay v. United Healthgroup*.  *Klay* extensively discussed the structural differences between traditional injunctions issued under a federal court's inherent equitable powers and injunctions issued under the All Writs Act.  376 F.3d at 1097-1104.  As a remedy for violations of the complaining party's rights, a traditional injunction "must be predicated upon a cause of action, such as nuisance, trespass, the First Amendment, etc."  *Id.* at 1097.  A traditional injunction is "potentially available only after a plaintiff can make a showing that some independent legal right is being infringed," thus "articulat[ing] a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6)" for "failure to

15

state a claim." *Id.* at 1097-98. An All Writs Act injunction has a different basis.

As we stated in *Klay*:

> Whereas traditional injunctions are predicated upon some cause of action, an All Writs Act injunction is predicated upon some other matter upon which a district court has jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is no such requirement to obtain an All Writs Act injunction—it must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior.

*Id.* at 1100. We think that the above statement is applicable quite generally, not

just to injunctions, but to all orders issued under the Act in a non-appellate

capacity.[11] It is a basic precondition to a court's issuing such an order that there be

some other matter over which the court has jurisdiction—some other proceeding in

that court or some order or judgment previously made by that court—and that the

All Writs Act order serve to protect that proceeding, order, or judgment from some

threat to its integrity. This requirement, we would note, defines only the outer

limit of a court's power to invoke the Act in a non-appellate capacity, merely

identifying the kind of situation in which issuance of such an order could even be

considered. There are further standards and doctrines governing the proper

---

[11] It may be recalled in the present case that Rohe did not request an injunction, but instead an order that would declare certain actions of other courts void and award damages against the respondent.

16

exercise of this power in particular circumstances,[12] but we need not describe those

doctrines at length here since the basic requirement of an appropriate underlying

proceeding is all that is needed to resolve the present case.

A few examples illustrating appropriate occasions for non-appellate use of

the Act may nevertheless be helpful.  In the course of an ongoing proceeding, a

court may "employ procedures necessary" to "facilitat[e] the court's effort to

manage the case to judgment," as by "issu[ing] orders to aid in conducting factual

inquiries or to permit the use of interrogatories in habeas corpus proceedings."  *ITT*

*Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978) (citations

omitted) (first citing *Am. Lithographic Co. v. Werckmeister*, 221 U.S. 603, 609-10,

31 S. Ct. 676, 678 (1911); then citing *Harris*, 394 U.S. at 298-300, 89 S. Ct. at

1090-91).  Likewise, where a court is exercising jurisdiction over particular

property, as in an *in rem* proceeding or with regard to a bankruptcy estate, the court

generally has the power to protect its jurisdiction over that property by enjoining

proceedings in other courts regarding the property, *Klay*, 376 F.3d at 1103-04,

because "[c]ontrol over the *res* is fundamental to the . . . court's ability to render

judgment in the case," *Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re*

---

[12] *See, e.g.*, *Klay*, 376 F.3d at 1101-04.  We note that the applicable standards do not include the conventional four-factor test for traditional injunctions—in the preliminary injunction context, (1) likelihood of success on the merits, (2) irreparable injury, (3) balance of costs to the parties, and (4) public interest—since this test "do[es] not apply to injunctions under the All Writs Act."  *Id.* at 1097, 1100-1101.

17

*Ford Motor Co.)*, 471 F.3d 1233, 1251 (11th Cir. 2006).[13]  Finally, a good example

of how an All Writs Act order can protect a past judgment is found in *United*

*States v. Hall*, 472 F.2d 261 (5th Cir. 1972), where, following a final judgment

desegregating the Jacksonville public schools, one of the affected schools was

disturbed by "racial unrest and violence," leading the district court to enter an

order prohibiting entry into the school by unauthorized persons and enjoining all

persons having notice of the order from disrupting the school's orderly operation.

*Id.* at 262-63.  Our predecessor Circuit sustained the order, as applied to an

individual who was convicted of criminal contempt despite not being a party to the

litigation, on the grounds that "disruptive conduct" would both "jeopardize the

effect of the court's judgment already entered" and "also undercut its power to

enter binding desegregation orders in the future." *Id.* at 263-65.

C.

We readily conclude that this case is not one in which the District Court

could issue an order under the All Writs Act.

---

[13] For this reason, a conflicting *in rem* proceeding in state court, where the federal court has first obtained jurisdiction of the *res*, presents one of the specific situations where a federal court is allowed to enjoin state-court proceedings. *Bayshore Ford*, 471 F.3d at 1249-51.  Such an injunction is ordinarily barred by the Anti-Injunction Act, 28 U.S.C. § 2283, but this situation falls under the Act's exception for injunctions "necessary in aid of [the court's] jurisdiction." *Id.* at 1250-51; *see also Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 675-76 (11th Cir. 2012) (per curiam) ("If one of the three specific exceptions contained in the Anti–Injunction Act permits an injunction, the All Writs Act grants a federal court the power to issue it.").

Preliminarily, it should be noted that Rohe's petition clearly does not call for the District Court to act in its appellate capacity in issuing the requested All Writs Act order. While the District Court has appellate jurisdiction over the bankruptcy court, the petition does not ask the District Court to direct any action by the bankruptcy court or otherwise intervene in the bankruptcy proceedings. Moreover, any attempt by the District Court to issue an All Writs Act order directed to the bankruptcy court would be inappropriate because the Act is not meant to serve as "a substitute for the regular appeals process." *Cheney*, 542 U.S. at 380-81, 124 S. Ct. at 2587. The party seeking such an order to a lower court "must have no other adequate means to attain the relief he desires." *Id.* at 380, 124 S. Ct. at 2587 (alteration adopted). Here, by contrast, Rohe had an alternative avenue of redress: any action that the District Court could have directed the bankruptcy court to take is something that Rohe could have first asked the bankruptcy court to do, and, if the bankruptcy court denied relief, Rohe could have appealed that court's decision to the District Court.[14] Indeed, Rohe did ask the bankruptcy court to enforce the automatic stay and did appeal the bankruptcy court's orders regarding the automatic stay and the removal of the state foreclosure case. Review of these issues by petition under the All Writs Act would constitute an exceedingly close

---

[14] Since 28 U.S.C. § 158(a) allows the District Court to grant leave to appeal interlocutory orders of the bankruptcy court in addition to providing for review of final judgments, the District Court has the power to review any action by the bankruptcy court.

substitute for the review sought in those appeals.[15]

Our inquiry, then, concerns the propriety of non-appellate use of the Act in response to Rohe's petition. The threshold question is whether there is some underlying proceeding, order, or judgment over which the District Court has jurisdiction, such that the Court would be in a position to protect that proceeding or matter from some threat to its integrity by issuing the requested order. Rohe's petition alleges two kinds of possible threats to judicial process, namely violations of the automatic stay and violations of Rohe's removal rights; we can consider each of these claims in turn to see whether either one points toward a proceeding that would be an appropriate basis for an All Writs Act order.

A violation of the automatic stay would be a threat to the integrity of Rohe's bankruptcy case. The automatic stay is a "fundamental procedural mechanism" facilitating the bankruptcy court's basic role in ensuring the orderly administration and equitable distribution of the bankruptcy estate, *Fla. Dept. of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073, 1085 (11th Cir. 2011), and enforcing the automatic stay could certainly serve to protect the bankruptcy case. The bankruptcy case,

---

[15] Rohe's appeals were dismissed in relevant part by the District Court eleven days before we held oral argument in this case. At oral argument, Rohe asserted that she could still file a motion for reconsideration of that order, which decided in part that some of her claims were barred there because they had been brought here. The docket reflects that Rohe has filed a motion for reconsideration, and we express no opinion on the appropriate resolution of that motion.

20

however, is a proceeding in the bankruptcy court, and that court has all the powers necessary to enforce the automatic stay. Indeed, the bankruptcy court can exercise authority provided by both the All Writs Act, *see Estate of Jackson v. Schron (In re Fundamental Long Term Care, Inc.)*, 873 F.3d 1325, 1338-41 (11th Cir. 2017), and 11 U.S.C. § 105(a), which provides that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Because the bankruptcy case falls within the purview of the bankruptcy court, which is well-equipped to protect the proceeding's integrity, the bankruptcy case is not a proceeding on which non-appellate use of the All Writs Act by the District Court could be predicated.

Similar considerations apply to the issue of the removal stay. While the parties have raised issues about whether removal of the state foreclosure case was effective and, if so, whether the case remains within the bankruptcy court's jurisdiction, we need not resolve these questions in order to dispose of this appeal. Whenever a case has been removed to federal court, the continued prosecution of the state case by a party and attempted further action in the case by the state court could present a threat to the federal court's capacity to effectively adjudicate the removed case.[16] Once again, however, the removed foreclosure case, insofar as it

---

[16] It is for this reason that federal courts have the power to enjoin state-court proceedings in a removed case, *see supra* note 5.

exists, is a proceeding in the bankruptcy court, and the bankruptcy court is well-equipped to safeguard that proceeding.  Hence the removed foreclosure case is also not a proper basis for the requested All Writs Act order.  And any proceedings other than the bankruptcy case and the removed case would be even less relevant to Rohe's petition.

In sum, there is no underlying proceeding of which the District Court has jurisdiction and which it would be properly acting to protect by issuing the requested order.  Thus there is no basis for non-appellate use of the All Writs Act in this case.  The Act does not empower the District Court to issue the order sought by the petition, and dismissal was proper.

**AFFIRMED.**